OPINION OF THE COURT
Charles J. Siragusa, J.
This declaratory judgment action was precipitated by a negligence and malpractice action filed by Ms. Keigh Beth Kenyon against several defendants, including Michael Boccacino, the installer of a certain furnace, and ultimately against defendant Larsen, who had already been brought into the lawsuit as a third-party defendant by Boccacino. The alleged injury resulted from carbon monoxide poisoning, alleged to have occurred when a furnace installed in a utility closet in plaintiff’s condominium, either by design or installation, did not adequately vent carbon monoxide into the outside atmosphere through a vent or chimney. Rather, it was allegedly confined in an unsafe concentration within the closet and ultimately the plaintiff’s entire apartment.
Ms. Kenyon, plaintiff in both this action and the underlying action, has moved by summary judgment for an order declar *993 ing defendant, Security Insurance Company of Hartford (hereinafter DPIC), obligated to defend and indemnify defendant Larsen against the claim in the underlying action. She has done so on two grounds. First, that the pollution exclusion clause to Larsen’s policy does not encompass the conduct here. Second, that DPIC failed to provide notice of disclosure pursuant to section 3420 (d) of the Insurance Law.
Defendant Larsen has cross-claimed and cross-moved for summary judgment for the same relief, upon the same grounds or in the alternative, for further discovery against DPIC, in the furtherance of its cross claim.
In support of its opposition DPIC has relied upon the following three theories. First, DPIC has opposed any order compelling it to indemnify and defend based upon clauses contained in the section entitled "Insuring Agreements”, subdivision "B”, "What we do not insure”. Found in that subdivision is (subpara 14) "Environmental Damage”, as modified by a "Pollution Exclusion” dated October 14, 1988. Second, DPIC urges that its disclaimer and denial of coverage to its insured and to third-party plaintiff, Boccacino, were adequate notice pursuant to section 3420 (d) of the Insurance Law. Third, DPIC opposed and cross-moved for summary judgment claiming that plaintiff, Kenyon, lacks standing to commence the instant action and that in any event, as a matter of law, the pollution exclusion clause referenced under the environmental damage section of the policy excludes coverage for the injury.
JUSTICIABILITY
Plaintiff here has an identifiable interest in a justifiable controversy sufficient to seek and be accorded relief under CPLR 3001. DPIC has urged that Kenyon "lacks standing” to demand DPIC to indemnify Larsen. While courts considering cases involving public law, statutes or enactments (see, e.g., Phelan v City of Buffalo, 54 AD2d 262 [4th Dept 1976]) have considered the absence of a "mature” claim an element of "standing” to sue, that standard has not been applied in litigation not involving the public interest. (See, 3 Weinstein-Korn-Miller, NY Civ Prac f 3001.04, at 30-20, 30-21.) In those cases not involving public law, declaratory judgment actions are properly maintained in the court’s sound discretion "when the pleadings and affidavits submitted state a real controversy involving substantial legal interests, and it has been shown that a declaratory judgment would be useful” (citations omit *994 ted) (Reliance Ins. Co. v Garsart Bldg. Corp., 122 AD2d 128, 131 [2d Dept 1986]).
The interest of an injured person in the status of a defendant’s insurance is implicitly recognized by the notice requirements of Insurance Law § 3420 (d). Contrary to DPIC’s claims, both the courts (see, Curreri v Allstate Ins. Co., 37 Misc 2d 557 [Sup Ct, NY County 1963]) and commentators (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3001:10, at 438-439; 3 Weinstein-Korn-Miller, NY Civ Prac |f 3001.06d, at 30-64, 30-65) have recognized an injured plaintiffs interest in defendant’s insurance to be sufficient to maintain a declaratory judgment action.
NOTICE OF DISCLAIMER OR DENIAL OF COVERAGE
Defendant DPIC has failed to provide notice of disclaimer of liability or denial of coverage to the injured party, within a reasonable time, pursuant to Insurance Law § 3420 (d), and is therefore estopped from refusing to indemnify Larsen as to any judgment obtained by Kenyon. DPIC, in paragraph 39 of its cross motion, asserts in applicable part: "several months before Larsen’s involvement as a party, D.P.I.C. had notified [sic] that it would be disclaiming coverage, see letters of plaintiffs counsel dated February 27, 1989 and responding letter to D.P.I.C., dated April 14, 1989 in Exhibits B and D, respectively. See also, disclosure letter of June 13, 1989 in Exhibit E.” Exhibit B to DPIC’s affidavit is a letter from plaintiff to Larsen asking them to refer the claim to their insurance company. Exhibit C is a letter from Larsen’s attorney to Larsen’s DPIC agent. Exhibit D is a letter from that agent to DPIC regarding plaintiffs claim against Larsen. Exhibit E is a letter dated April 14, 1989, from DPIC to plaintiff. While it does not disclaim liability, it acknowledges the claim and directs Kenyon to submit correspondence regarding the claim to DPIC. Exhibit G is a letter dated June 12, 1989, from DPIC to Larsen declaiming coverage.
The notice provided by DPIC to Larsen, disclaiming or denying coverage in the third-party action by Boccacino, arguably references a superseded pollution exclusion claim. However, I find this notice was sufficient to place Larsen on notice of the disclaimers to coverage under the existing policy. If the "pollution exclusion” endorsement was an adequate basis to disclaim coverage, the notice provided satisfied the requirements of Insurance Law § 3420 (d).
*995 These disclaimers to the insured do not substitute for notice to the injured party (Hartford Acc. & Indent. Co. v J. J. Wicks, Inc., 104 AD2d 289 [4th Dept 1984]). No notice of disclaimer or denial of coverage from DPIC or any of its agents to plaintiff has been provided to the court.
It is clearly DPIC’s burden to prove either notice or a basis for the court to conclude that the delay or failure to notify was reasonable. (Interboro Mut. Ins. Co. v Gatterdum, 163 AD2d 788 [3d Dept 1990].) When, as here, the insurance company relied for this denial of coverage upon an endorsement or rider to a policy otherwise in effect and apparently applicable to the conduct at issue, the failure to provide notice of disclaimer or disclosure pursuant to Insurance Law § 3240 (d) compels estoppel of the disclaimer. (Zappone v Home Ins. Co., 55 NY2d 131 [1982].) Unlike the facts in Nassau Ins. Co. v Manzione (112 AD2d 408 [2d Dept 1985]), estoppel here does not operate to create coverage when no current relationship of insured to insurer existed at the time of the claim. Here, Larsen and DPIC had a long-standing relationship of insurer and insured. The policy ostensibly insured Larsen for claims arising as a result of the pursuit of his profession, and the instant claim clearly arose in such a context.
SCOPE OF COVERAGE UNDER THE POLLUTION EXCLUSION CLAUSE
The endorsement amending section 1, "Insuring Agreements”, "B”, "What we do not insure”, subparagraph 14, "Environmental Damage” of the Agreement between the parties is denominated "Pollution Exclusion” on form No. DP 7101-0 (10/86), effective as to Larsen on October 14, 1988, under policy No. FL429672. It reads in applicable part:
"We will not defend or pay damages under this policy for claims or expenses resulting from professional services performed by you, which * * * arise from:
"1. The actual, alleged or threatened discharge, dispersal, release or escape of 'pollutants’, or
"2. Any governmental or regulatory directive or request you or anyone acting under your direction or central trust for monitor, clean up, remove, contain, treat, detoxify, or neutralize 'pollutants’ ”.
The Agreement defines pollutants in part as "[a]ny solid, liquid, gas or thermal irritant or contaminant, including *996 smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.”
The burden of demonstrating that the language of this pollution exclusion unambiguously applies not only to acts that threaten or achieve "environmental damage” as suggested in the policy reference guide to coverage, but also to the nonpolluting confinement of gases causing injury rests squarely with the defendant DPIC. (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640; see also, Niagara County v Utica Mut. Ins. Co., 80 AD2d 415, 420 [4th Dept 1981].) The test for the existence of an ambiguity in insurance agreements is whether "an ordinary business man in applying for insurance and reading the language of these policies when submitted, would not have thought himself covered against precisely the damage claims now asserted”. (Thomas J. Lipton, Inc. v Liberty Mut. Ins. Co., 34 NY2d 356, 361 [1974]; Seaboard Sur. Co. v Gillette Co., 64 NY2d 304 [1984].) The reasonable expectation of the insured may be given effect even if careful examination of the policy provision might negate that expectation (see, Keeton, Insurance Law Rights at Variance with Policy Provisions, 83 Harv L Rev 961, 967 [1970]).
The ambiguity of the endorsement relied upon by DPIC is best seen by its inclusion in the quick reference guide to the policy under "environmental damage” to limit the protection afforded to the insured for pollution capable of environmental damage. The terms used by DPIC to describe the manner in which harm may occur, "discharge, dispersal, release or escape” are words recognized in this State as terms of art in environmental law. (Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, supra.) Further, the context in which the terms are used, a "pollution exclusion” and the reference in the exclusion to governmental and regulatory directives regarding pollutants, contained in subparagraph 2 of the endorsement, however defined, compel the conclusion that a reasonable businessman could reasonably believe that the broad coverage the Agreement included would not be defeated under the facts of this case.
The historical purpose of pollution exclusion clauses has been to insure that industrial or commercial polluters would be compelled to bear the cost of their wrongdoing (see, Continental Cas. Co. v Rapid-American Corp., supra, and the cases cited therein). This interpretation of the purpose of the clause, and therefore its impact, has led courts of most jurisdictions *997 to limit its application accordingly (see generally, 12 Couch, Insurance 2d § 44A: 122 [rev ed]).
The pollution clause in this case has, however, been modified in such a way that it arguably differs from the clauses considered in past cases. Significantly, the language exempting "sudden and accidental” discharges from the operation of the exclusion has been eliminated, as has language regarding release into the atmosphere, etc. These changes in the form language of the exclusion were intended to reduce the insurance companies’ exposure to liability for damage resulting from environmental pollution, and the resulting claims of multiple plaintiffs for widespread damage. These changes have had the desired effect (see, e.g., Perkins Hardwood Lbr. Co. v Bituminous Cas. Corp., 190 Ga App 231, 378 SE2d 407 [1989] [release of smoke during a nonhostile fire]; Guilford Indus. v Liberty Mut. Ins. Co., 688 F Supp 792 [D Me 1988] [new form of clause excludes coverage for release of oil even if the release was not sudden, unexplained nor even the result of negligence]).
The endorsement, however, has not removed ambiguity in determining the extent to which it may rightfully be invoked to deny coverage from activities which have few indicia of traditional environmental pollution cases. The decisions in Guilford Indus. v Liberty Mut. Ins. Co. (688 F Supp 792 [D Me 1988], supra) and Budofsky v Hartford Ins. Co. (147 Misc 2d 691 [1990]) do not compel a different outcome. Each of these cases deals with traditional notions of pollution, falling loosely within the ambit and common understanding of pollution.
Here, as in Grinnell Mut. Reins. Co. v Wasmuth (432 NW2d 495 [Minn Ct App 1988]), there are few elements of a typical pollution claim. Kenyon’s injury was occasioned by the confinement of a gas, the "discharge, dispersal, release or escape” of which from the condominium would have eliminated the possibility of injury to this plaintiff.
Although the carbon monoxide gas alleged to have been negligently confined because of an improperly installed heater would, if released, fall within the policy definition of a "pollutant”, such an occurrence does not fall within the public understanding of pollution. It is not implicated by the insurance company’s use of terms of art common in environmental law. Moreover, it is not unambiguously within the obvious or historical ambit of pollution exclusion endorsements. (Thompson v Temple, 580 So 2d 1133 [La Ct App, 4th Cir 1991].)
*998 The defendant, Larsen, was in the business of engineering and architecture. Like the insured in Grinnell Mut. Reins. Co. v Wasmuth (432 NW2d 495 [Minn Ct App 1988], supra), he did not generate or produce hazardous substances routinely in the course of his profession, nor did he dispose of toxic waste as a part of his business. He purchased a sweeping professional liability policy to protect himself from claims of damage resulting from the pursuit of his profession. Under the broad coverage he purchased, he reasonably expected coverage under the policy. DPIC, as his insurer, certainly knew the nature of his business and, if they desired to do so, could have drafted unambiguous endorsements to eliminate coverage for the negligent design of heating, ventilation, and air-conditioning systems. Perhaps in the context of insuring major corporations or municipalities engaged in many diverse activities, the reasonable expectations raised by this pollution exclusion might be different. (See, League of Minnesota Cities Ins. Trust v City of Coon Rapids, 446 NW2d 419 [Minn Ct App 1989].) Here, however, the $84,000 annual premium paid by Larsen is strong evidence that he believed that the broad coverage he purchased covered his professional activities unless he was a polluter. The context and language of the endorsement supports the conclusion that Larsen’s expectation was not unreasonable.
It is the decision of this court that plaintiff’s motion for summary judgment is granted in all respects. Defendant Larsen’s cross motion for summary judgment, to the extent that he seeks to be indemnified and defended by DPIC, is granted, and DPIC’s motion for summary judgment is denied in all respects. Plaintiff Kenyon has, therefore, the right to compel DPIC to indemnify claims alleged by Kenyon against Larsen in an action under index No. 2120-89. Larsen, pursuant to its insurance policy, has the right to compel DPIC to defend and indemnify it in that action.