**AMERADA HESS CORPORATION and
HESS OIL VIRGIN ISLANDS
CORPORATION, Plaintiff
v.
ZURICH INSURANCE COMPANY, Defendants**

D.C. Civil No. 1997-0035

District Court of the Virgin Islands

Division of St. Croix

May 17, 1999

HENRY C. SMOCK, St. Thomas, VI, *Attorney for Defendants*

JOHN B. WYSS, Wiley, Rein & Fielding, Washington, D.C., *Attorney for Defendants*

ROBERT H. SHULMAN, MINDY G. DAVIS, Howrey & Simon, Washington, D.C., *Attorneys for Plaintiffs*

GEORGE ELTMAN, Christiansted, VI, *Attorney for Plaintiffs*

LEE ROHN, THOMAS H. HART III, Alkon, Rhea & Hart, Christiansted, VI, *Attorneys for Claimants*

## MEMORANDUM OPINION

FINCH, *Judge*

This matter comes before the Court on cross-motions for summary judgment.

## I. Background

For the purposes of this summary judgment determination, the parties have presented the following factual circumstances.

## A. The FCCU Construction Project

In 1991, Hess Oil Virgin Islands Corp. and its parent Amerada Hess Corp. (collectively "HOVIC" or "Plaintiffs") undertook to construct an addition to HOVIC's existing refinery on St. Croix. The addition, the construction of the Fluid Catalytic Cracking Unit ("FCCU"), was a major project involving the use of many subcontractors and other workers. HOVIC contracted with Zurich Insurance Company ("Zurich") to provide insurance coverage for the FCCU construction project. That insurance contract was entitled, "Hess Oil Virgin Islands Corporation (HOVIC) Primary General/ Third Party Liability Policy, Fluid Catalytic Cracking (FCCU Project) and Related Activities" (hereinafter "Insurance Contract"). The Insurance Contract was effective at all times relevant to this matter.

## B. The Insurance Contract

The Insurance Contract contains both general terms and conditions and specific endorsements. The general terms and conditions set forth the basic coverage. The endorsements address special situations in which coverage may be limited or excluded.

According to its general terms, the Insurance Contract specifically obligates Zurich to pay HOVIC for "all sums which [HOVIC] shall be legally obligated to pay as damages . . . on account of personal injuries, including death . . . caused by or arising out of each loss occurrence during the policy period . . . ." Insurance Contract, art. 1, at 4. An "occurrence" is defined as 'an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of [HOVIC]." *Id.*, art. 7, p. 10. HOVIC's basis for recovery is as follows:

> the total sum [that] the insured pays or becomes obligated to pay by reason of Personal Injury . . . either through adjudication or compromise, and shall also include hospital, medical and funeral charges and all sums paid as salaries, wages, compensation, fees, charges, and law costs, premiums on attachment or appeal bonds, interest, expenses for doctors, lawyers, nurses and investigators and other persons, and for litigation settlement adjust-

296

ment and investigation of claims and suits which are paid as a consequence of any loss occurrence covered hereunder . . . .

*Id.*, art. 8, at 11-12.

The Insurance Contract contains 14 endorsements that limit or exclude coverage. Endorsement No. 2 provides as follows:

This insurance does not cover any liability for:

Personal Injury or Property Damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape meets all of the following conditions:

a. the discharge, dispersal, release or escape must be neither expected nor intended by [HOVIC], and
b. The inception of the discharge, dispersal, release or escape must take place during the policy period, and
c. The discharge, dispersal, release or escape must not continue for more than 6 days, and
d. The discharge, dispersal, release or escape must be reported to the insurer within 30 days from the inception of the discharge, dispersal, release or escape.

*Id.*, Endorsement No. 2, at 20.

## C. The Underlying Lawsuits

On August 9, 1993, a hose from a delivery tank truck burst while it was transferring a substance known as "catalyst" from a delivery tank to the FCCU. Catalyst sprayed from the burst hose for about five to ten minutes. Some employees of HOVIC's contractors on the FCCU project were directly exposed to the catalyst. Shortly after the burst hose incident, some of the workers exposed to the catalyst complained of various ailments, including sore throat, irritation of the chest, and expectoration or vomiting of blood. At that time, however, HOVIC received no formal complaints or requests for compensation from the exposed workers.

On October 24, 1993, two months after the burst hose incident, eleven workers ("Claimants") who were exposed to the catalyst brought a suit for personal injuries against HOVIC in a case captioned *Thompson v. Hess Oil Virgin Islands Corp.*, Civ. No. 93-0250 (D.V.I. St. Croix). The Claimants alleged that they suffered physical injuries due to their exposure to the catalyst. When Mr. Ernest Isenberg, one of the original Claimants, died, his heirs instituted a second suit, styled *Jan Isenberg, et al. v. Hess Oil Virgin Islands, et al.*, Civil No. 95-0054 (D.V.I. St. Croix). Except for the allegations relating to Isenberg's death, the *Isenberg* complaint tracked the *Thompson* complaint virtually word for word.

## D. HOVIC's Tender and Zurich's Denial

On November 8, 1993, HOVIC notified Zurich of the *Thompson* lawsuit and requested acknowledgment of coverage; that tender was made three days after HOVIC was served with the *Thompson* complaint and 91 days after the burst hose incident. On May 15, 1995, HOVIC notified Zurich of the *Isenberg* complaint. By letters dated October 4, 1994, and May 30, 1995, Zurich denied coverage for the burst hose incident and the resulting lawsuits.

As a basis for its denial, Zurich cited the third and fourth conditions of Endorsement No. 2 and claimed that HOVIC did not meet those conditions. Specifically, Zurich asserted that the exposure to the catalyst continued for more than six days, not just immediately following the bursting of the hose. Zurich also contended that HOVIC did not report the burst hose incident within thirty days from the discharge, dispersal, release, or escape of the catalyst.

## E. HOVIC's Settlement of the Underlying Lawsuits

On April 27, 1997, HOVIC and the Claimants entered into a settlement agreement for up to $1.6 million. Under the terms of the agreement, HOVIC paid $160,000 in cash from its own funds and agreed to file a declaratory judgment action to force Zurich to pay the remaining $1.44 million under the Insurance Contract. Regardless of whether the declaratory judgment action is successful, HOVIC bears no additional responsibility to pay its own funds to the Claimants. If HOVIC recovers more than $1.44 million from

Zurich, HOVIC would pay the Claimants $1.44 million, and HOVIC and the Claimants would share the additional funds.

In accordance with the settlement agreement, HOVIC filed the instant declaratory judgment action against Zurich in 1997. The Claimants intervened as plaintiffs in the action in January, 1999. From November, 1998, to February, 1999, HOVIC and Zurich filed cross-motions for summary judgment.[1]

## II. Analysis

This memorandum first addresses the standards that the Court applies to summary judgment motions. Next, the memorandum presents an analysis of the issues raised by Zurich's motion for summary judgment. Lastly, the issues raised by HOVIC's summary judgment motion are analyzed.

### A. Standard for Granting Summary Judgment

The standard for granting summary judgment is set forth in FED. R. CIV. P. 56(c). That Rule provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

■ In the instant case, several issues concern the construction of contract language and its application to uncontested facts. The construction of an insurance policy is a question of law to be determined by the Court. *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992); *Coakley Bay Condominium Ass'n v. Continental Ins. Co.*, 26 V.I. 348, 770 F. Supp. 1046, 1050 (D.V.I. 1991). Such insurance coverage disputes generally are adjudicable on motions for summary judgment. *See, e.g., In re Texas Eastern Transmission Corp. PCB Ins. Coverage Litig.*, 15 F.3d 1230 (3d Cir. 1994), *cert.*

---

[1] The Court heard arguments on those motions on March 11, 1999. On March 31, 1999, the Claimants filed a document entitled Intervenors' Supplemental Memorandum in Support of Plaintiff's Motion for Summary Judgment and In Opposition to Defendant's Motion for Summary Judgment. That memorandum was grossly late, however, and will not be considered by the Court.

*denied*, 513 U.S. 915; *Armotek Indus. Inc. v. Employers Ins.*, 952 F.2d 756 (3d Cir. 1991).

In addition to the issues of law presented, Zurich argues that certain issues of fact preclude summary judgment in favor of HOVIC. Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Initially, the party moving for summary judgment has the burden of demonstrating that there exists no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Where the moving party does not have the burden of proof on the relevant issues of the case, the Court must determine whether the deficiencies in the non-moving party's evidence entitle the moving party to judgment as a matter of law. *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir.1990).

If the moving party carries its burden, the non-moving party "may not rest upon mere allegations or denials" set forth in its pleading. FED. R. CIV. P. 56(e); *see also Schoch v. First Fidelity*, 912 F.2d 654, 657 (3d Cir.1990). Rather, in order to defeat the summary judgment motion, the non-moving party must produce affirmative evidence to show that there is a genuine issue of material fact for trial. *Liberty Lobby*, 477 U.S. at 248. The affirmative evidence must consist of verified or documented materials. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1990). "Such affirmative evidence, regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less . . . than a preponderance." *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir.1989). The non-moving party must create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.

## B. Zurich's Motion for Summary Judgment

Zurich makes two primary arguments for summary judgment in its favor. First, Zurich asserts that Endorsement No. 2 of the Insurance Contract excludes coverage for the burst hose incident. Second, Zurich contends that the settlement agreement between

HOVIC and the Claimants is unenforceable, or at least is not enforceable against Zurich for more than HOVIC was legally obligated to pay under the settlement agreement.[2]

## 1. Whether Endorsement No. 2 Excludes Coverage of the Burst Hose Incident

For the purposes of these summary judgment motions, Zurich and HOVIC agree that the burst hose incident is a covered "occurrence" under the Insurance Contract, that Endorsement No. 2 is a form of the "pollution exclusion" commonly found in insurance contracts, and that HOVIC did not report the incident to Zurich until approximately 91 days after it occurred. Based on these uncontested facts, Zurich argues that the burst hose incident is excluded from coverage because of the unambiguous language of the pollution exclusion and the 31-day reporting requirement. HOVIC argues that the pollution exclusion is ambiguous and should be construed in its favor and that the 31-day reporting requirement cannot be invoked unless Zurich shows prejudice. Thus, the disputes over the construction of Endorsement No. 2 revolve around the language of the pollution exclusion and the 31-day reporting requirement.

### a. The Language of the Insurance Contract

As stated, Endorsement No. 2 provides as follows:

> This insurance does not cover any liability for:
> Personal Injury or Property Damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape meets all of the following conditions:

> e. the discharge, dispersal, release or escape must be neither expected nor intended by [HOVIC], and

---

[2] The parties also dispute whether the Claimants' exposure to the catalyst lasted more than six days, another cause for exclusion of coverage under Endorsement No. 2. This issue, however, is one of fact and is treated in section II.C.1. of this memorandum.

f. The inception of the discharge, dispersal, release or escape must take place during the policy period, and

g. The discharge, dispersal, release or escape must not continue for more than 6 days, and

h. The discharge, dispersal, release or escape must be reported to the insurer within 30 days from the inception of the discharge, dispersal, release or escape.

Insurance Contract, Endorsement No. 2, at 20.

### b. Rules of Construction

The Virgin Islands Code provides that, "[e]very insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement, or application attached to and made a part of the policy." 22 V.I.C. § 846. As a matter of general contract law, the Supreme Court has instructed that interpretation of a contract—

> depends upon the meaning of the terms of the writing in which the parties must be assumed to have embodied and expressed their whole intention, and to have defined all the conditions of the contract. The court is not at liberty, either to disregard words used by the parties, descriptive of the subject matter, or to insert words which the parties have not made use of.

*Harrison v. Fortlage,* 161 U.S. 57, 63, 40 L. Ed. 616, 16 S. Ct. 488 (1986).

The Third Circuit has commented that "the court will not make a different or better contract than the parties themselves have seen fit to enter into, and all parts of the writing will be given effect if possible." *Matter of Community Medical Center,* 623 F.2d 864 (3d Cir.1980). This Court has found that, "absent circumstances indicating a contrary intention of the parties, the language of [an insurance] policy is to be construed in its common, ordinary, and popular sense." *Evanston Insurance Co. v. Treister,* 794 F. Supp. 560, 569 (D.V.I. 1992). The standard to be used is the understanding of an ordinary person. *Id.*

Where the insurer authored the insurance policy and seeks to exclude coverage through its interpretation of that policy, the Court must apply a rigorous standard: "[e]xclusionary clauses must be clear, definite and explicit." *Coakley Bay*, 770 F. Supp. at 1050 (*quoting Playboy Enterprises v. St. Paul Fire and Marine Insurance*, 769 F.2d 425, 428 (7th Cir. 1985)). The Court will consider language in a contract to be ambiguous if it is read in the context of the entire agreement and still susceptible to more than one meaning. *Id.* Stated differently, "[a] provision of an insurance policy is ambiguous if reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning." 770 F. Supp. at 1050-51 (*quoting Vlastos v. Sumitomo Marine Fire Insurance Co.*, 707 F.2d 775, 778 (3d Cir. 1983)). The Third Circuit has stressed that the court "should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *Northbrook Ins. Co. v. Kuljian Corp.*, 690 F.2d 368, 372 (3d Cir. 1982) (*quoting St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir. 1981)). Furthermore, "to establish an ambiguity, the insured must do more than proffer a competing 'possible construction of the policy.'" *New Castle County v. Hartford Accident & Indemnity Co.*, 933 F.2d 1162, 1182 (3d Cir. 1991).

### c. Whether the Pollution Exclusion is Ambiguous

The Court's determination of whether the pollution exclusion applies to the type of accident at issue in this case turns primarily on the language of the exclusion itself. Zurich contends that it is unambiguous and must be given its plain and ordinary meaning. In support of its contention, Zurich points out that the exclusion specifically applies to "personal injury . . . arising out of the discharge . . . of . . . irritants, contaminants or pollutants." Insurance Contract, Endorsement No. 2, at 20. According to Zurich, this language has a clear meaning that renders the provision free of doubt.

HOVIC, on the other hand, argues that Courts routinely find similar pollution exclusions to be ambiguous. Furthermore, HOVIC asserts that the historical purpose of the exclusion supports limiting the clause to large scale, environmental contamina-

tion cases. Finally, HOVIC contends that, under Zurich's construction of the language, most of the policy's coverage would be nullified, as any accident even remotely involving a chemical, fume, or pollutant of some sort would exclude coverage. If the Court find the pollution exclusion to be ambiguous, HOVIC argues, it must construe that ambiguity in favor of HOVIC and not exclude coverage under the pollution exclusion.

As is evident from the foregoing discussion, the parties have presented this Court with compelling reasons that support their respective positions. Indeed, the strength of their arguments is perhaps best reflected in the vast divergence of the jurisprudence from other courts across the country that have already struggled with the question now facing this Court. Unfortunately, despite the abundance of opinions construing the pollution exclusion, courts have not reached a clear consensus as to its proper construction.

In 1997, the Illinois Supreme Court undertook a thorough analysis of the case law construing various pollution exclusions. *American States Ins. Co. v. Koloms*, 177 Ill. 2d 473, 687 N.E.2d 72, 78, 227 Ill. Dec. 149 (Ill. 1997). The Court learned that some courts have held that the exclusion is vague and ambiguous and have favored the insured. *Id. (citing Motorists Mutual Insurance Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky.App. 1996); *Gamble Farm Inn v. Selective Insurance Co.*, 440 Pa. Super. 501, 656 A.2d 142 (Pa. 1995); *Kenyon v. Security Ins. Co.*, 163 Misc. 2d 991, 626 N.Y.S.2d 347 (1993)). It also determined that other courts have found the exclusion to be plain and unambiguous and have favored the insurer. *Id. (citing Reliance Insurance Co. v. Moessner*, 121 F.3d 895 (3d Cir. 1997); *League of Minnesota Cities Insurance Trust v. City of Coon Rapids*, 446 N.W.2d 419 (Minn.App. 1989)). Still other courts have largely ignored the language of the exclusion and have found coverage on the basis of the reasonable expectations of the insured. *Id. (citing Regional Bank v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494 (10th Cir. 1994)).

"The source of the disagreement within the jurisprudence seems to lie in the fact that the language of the clause is 'quite specific' on its face, and yet a literal interpretation of that language results in an application of the clause which is 'quite broad.'" *Id.* (citations omitted). The courts that choose to focus exclusively on the bare language of the exclusion easily conclude that it is unambiguous.

*See, e.g., Reliance Insurance Co. v. Moessner,* 121 F.3d 895 (3d Cir. 1997) (applying Pennsylvania law). The other courts that look to the possible applications of the bare language question whether the breadth of the language renders application of the exclusion uncertain. *See, e.g., Ekleberry, Inc. v. Motorists Mutual Insurance Co.,* 1992 WL 168835 (1992) (the extremely broad language of the pollution exclusion raises an issue as to whether the exclusion is so general as to be meaningless); *American States Insurance Co. v. Kiger,* 662 N.E.2d 945, 948 (Ind. 1996) ("Clearly, this clause cannot be read literally as is would negate virtually all coverage").

■ Virgin Islands law has never addressed the issue of whether a pollution exclusion, such as the one present here, is ambiguous. *But see Reliance,* 121 F.3d 895 (applying Pennsylvania law); *Evanston Ins. Co. v. Treister,* 794 F. Supp. 560, 569 (D.V.I. 1992) (applying Florida law). The instant case, however, forces the Court to do so. In undertaking this task, the Court has reviewed both the language and the application of Endorsement No. 2 and finds it to be unambiguous in both regards. Clearly, the bare language indicates that the parties contemplated all pollution-related accidents and specifically excluded them from coverage. Although HOVIC has proffered an alternate construction, the Court finds that there is no basis for finding that reasonably intelligent persons reading the entire policy would honestly find it to be ambiguous. Moreover, the Court finds that this literal interpretation of Endorsement No. 2 does not result in an application that indicates that the language is overly-broad. The subject accident involved a true pollution event—a hose burst and sprayed catalyst into the air and onto the bodies of numerous individuals. This may not be a toxic tort the size of Three Mile Island, but neither is it the case that one individual slipped on an open can of Drano, as HOVIC suggests in is motion.

Therefore, the Court finds that Endorsement No. 2 is unambiguous and, if applied, will exclude coverage for the subject accident.

### d. Whether Zurich Must Show That It Was Prejudiced by HOVIC's Untimely Report

HOVIC claims that the thirty-day reporting requirement found in Endorsement No. 2 is merely a "notice provision" that cannot be

invoked unless Zurich demonstrates that it has been prejudiced by the timing of such notice. Zurich argues that Endorsement No. 2 is not a "notice provision" that is a condition to coverage, but rather is a "reporting requirement" that is a condition for overcoming an express exclusion of coverage. Therefore, the requirement for showing prejudice, usually found with notice provisions, does not apply, according to Zurich.

■ As a general rule, an insurer in the Virgin Islands may not rely on the timing of notice to exclude coverage, unless it demonstrates by competent evidence that it was "actually and materially prejudiced" as a consequence of the notice. *See Laplace v. Sun Ins. Office., Ltd.*, 298 F. Supp. 764 (D.V.I. 1969); *Leuckel v. Fed. Ins. Co.*, 303 F. Supp. 407 (D.V.I. 1969). In *LaPlace*, the policy required the insured to give notice of an occurrence "as soon as possible" after an occurrence. The insured was involved in a covered occurrence, but he did not receive notice of the litigation arising from the occurrence for ten months, at which time he notified the insurer. Notwithstanding the ten-month delay, this Court found that the insurer was still obligated to provide coverage unless it could demonstrate actual and material prejudice: "it [is] unreasonable to allow a carrier to deny its coverage even though its position was not substantially affected by the fact that it was not promptly notified of the accident or loss. This would not only be unfair to the insured, but would be against the public interest as well.' *LaPlace*, 298 F. Supp. at 767.

While recognizing this general rule for notice requirements, Zurich argues that Endorsement No. 2 is not a notice requirement, but rather is a reporting requirement. As Zurich points out, the distinction between these two notification provisions was well described in *Textron, Inc. v. Liberty Mutual Ins.*, 639 A.2d 1358 (R.I. 1994). In *Textron*, the Rhode Island Supreme Court stated:

> Whereas both types of provisions require a literal "notification" of the insurer, the notification serves materially different purposes in the two provisions. In the case of a notice provision, which . . . usually requires notice "as soon as practicable," the notification serves to facilitate the timely investigation of claims by bringing an event to

306

the attention of the insurer and allows an inquiry before the scent of factual investigation grows cold. In contrast, in the case of a reporting requirement . . ., the prescribed notification actually defines the scope of coverage provided by the policy, as the "transmittal of notice of the claim to the insurance carrier" is the event that triggers coverage. . . . We emphasize that our inquiry into the nature of any provision must necessarily be guided by the operation and substance of the provision rather than any label that may coincidentally or haphazardly be attached to a policy.

*Id.* at 1364 (citations omitted). The Court then went on to find that the subject provision operated to define the scope of coverage, and therefore was appropriately characterized as a reporting provision. *Id.*

Likewise, in *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 1997 U.S. Dist. LEXIS 22164, 1997 WL 538755 (N.D. Tex. Aug. 26, 1997), the subject insurance policy contained an endorsement barring coverage for pollution-related events except where express conditions were met. One of those conditions required that the pollution incident be reported to the insurer within thirty days. When an oil well discharged contaminants onto adjacent property, the insured delayed reporting the event to its insurer for 38 days. The court granted the insurer's summary judgment motion, holding that the insured's failure to comply with the thirty-day reporting requirement meant that the exclusion applied, precluding coverage as a matter of law. *Id.* at 5-6. Stated differently, the court found that the subject exclusion was a reporting requirement, not a notice provision. *Id.*

HOVIC asserts that, even if the notification provision in Endorsement No. 2 is a reporting requirement, it cannot be enforced without a showing that Zurich was prejudiced by the late reporting of the claims. In considering this argument, the Court is again guided by *Textron*. There, the Rhode Island Supreme Court dealt with the specific issue of whether the prejudice rule for notice provisions applies with equal force to reporting requirements. *See* 639 A.2d at 1364-66.

The Court began its analysis by refusing to apply the "notice-prejudice" rule mechanically. *Id.* at 1365. Instead, the Court explored "whether the incorporation of the reporting requirement presents any distinctions or countervailing considerations that militate against" requiring a showing of prejudice. *Id.* The Court found three relevant considerations. *Id.*

First, the Court considered—

> that the reporting requirement operates substantively to define the scope of coverage, as opposed merely to facilitate the insurer's investigation of a claim. The very nature of the coverage provided required reporting within a specific time frame. Given this fact, excusing [the insured's] delay would alter a fundamental term of the policy in respect to [the coverage].

*Id.* Second, the Court evaluated the relationship between the scope of coverage and the amount of the premium charged; the Court specifically found that the amount of the premium paid was in proportion to the risk as it was circumscribed by a strict reading of the reporting requirement. *Id.* Third, the Court considered the fact that the subject insurance policy was not an adhesion contract; rather, the reporting requirement between the parties had been a result of arms-length negotiations. Based upon these considerations, the Court declined to impose a prejudice requirement on the insurer. *Id.* at 1366.

Likewise, the court in *Matador* refused to require a showing of prejudice before allowing an insurer to invoke the subject reporting requirement. 1997 WL 538755, *6. Texas, like the Virgin Islands, requires a showing of prejudice before an insurer can invoke a notice requirement. *Id.* However, the court rejected the insured's argument that prejudice was required in order for the insured to enforce the policy's reporting requirement. *Id.*

■ In the instant case, the notification provision of Endorsement No. 2 does not merely facilitate Zurich's investigation of a claim; it "actually defines the scope of coverage provided by the policy, as the 'transmittal of notice of the claim to the insurance carrier' is the event that triggers coverage." *See Textron*, 639 A.2d at 1364. The

very nature of the coverage provided required reporting within 31 days of the occurrence. Given this fact, excusing HOVIC's delay would alter a fundamental term of the policy in respect to the coverage. Therefore, the Court finds that the nature of Endorsement No. 2 is more that of a reporting requirement than a notice provision. Moreover, the Court finds no evidence that either the Insurance Contract or Endorsement No. 2 was an adhesion contract; the reporting requirement between the parties had been a result of arms-length negotiations. Based upon these considerations, the Court declines to impose a prejudice requirement on Zurich.

### e. Conclusion as to Whether Endorsement No. 2 Excludes Coverage for the Burst Hose Incident

█ The Court finds that Endorsement No. 2 excludes coverage for the burst hose incident due to HOVIC's untimely reporting of the Thompson and Isenberg claims. Accordingly, the Court will grant summary judgment in favor of Zurich. Nonetheless, the Court will address each of the remaining arguments set forth by Zurich and HOVIC.

### 2. The Enforceability of the Settlement Agreement Against Zurich

Zurich argues that the Court should not enforce the settlement agreement between HOVIC and the Claimants because (1) the agreement is tainted by inherent conflicts and the potential for abuse because it provides for recourse only to Zurich, and (2) the provision allowing HOVIC to receive part of the funds from any payment from Zurich exceeding $1.44 million makes the settlement agreement unenforceable. Zurich further maintains that, if the agreement is enforceable against HOVIC, Zurich's exposure is limited to the amount of funds that HOVIC was legally obligated to pay under the agreement.

### a. Whether the Settlement Agreement Between HOVIC and the Claimants, With Recourse Only to Zurich, Is Unenforceable for Policy Reasons

Zurich's claims that the settlement agreement between HOVIC and the Claimants, with recourse only to Zurich, is tainted by

inherent conflicts and a potential for abuse, and therefore should not be enforced against Zurich. Zurich cites *Hitt v. Cox*, 737 F.2d 421 (4th Cir. 1984) to support this position. In light of Third Circuit precedent contrary to *Cox*, however, the Court is inclined to enforce the settlement agreement.

In *Hitt*, an insured sought indemnification from its insurer for a $500,000 settlement reached with a claimant. The settlement provided that the insured would pay the claimant $500,000 in cash and would assign an additional $150,000 to the claimant if it was successful in an action against the insurer. The Fourth Circuit Court of Appeals described these settlement terms as "highly irregular" and "patently unreasonable" and refused to allow coverage for the conditional portion of the settlement. *Id.* at 426. In doing so, the court stated that, "in this situation, the [claimant and the insured] no longer have adverse interests, and their conditional settlement is presumptively unreasonable':

> To allow the [insured] full recovery in this case would set a precedent allowing any insured left to defend himself not only to settle at a reasonable amount, but to give away an additional amount up to the liability limit of the policy conditional on a successful indemnity suit against the insurance company. We decline to reach such an unfair result.

*Id.* at 426.

Contrary to the holding of *Hitt*, the Third Circuit has permitted an insured and a claimant to reach settlement with recourse only to the insurer. In *Trustees of the University of Pennsylvania v. Lexington Ins. Co.*, the Court upheld an arrangement by which the insured paid the injured party a fixed sum at settlement and agreed to pay an additional sum if the insured succeeded in a suit against its insurer. 815 F.2d 890 (3d Cir. 1987). Likewise, in *Greater New York Mut. Ins. Co. v. North River Ins. Co.*, the Third Circuit approved an agreement by which an excess insurer paid a claimant a fixed sum and agreed to use its best efforts to recover an additional amount from the primary insurer through litigation. 85 F.3d 1088 (3d Cir. 1996). In both cases, the Court did not find the settlement agreements tainted by a conflict of interest or any abuse by the insured and the claimant.

310

■ The Court has considered Zurich's policy concerns and the reasoning of *Hitt*, but finds no conflict or abuse on behalf of HOVIC in reaching this settlement agreement. Furthermore, the Third Circuit's acceptance of such agreements is persuasive. Therefore, the Court will not find the subject settlement agreement to be unenforceable simply because of the recourse to Zurich.

### b. The Permissibility of the Sharing-of-the-Recovery Provision

The settlement agreement contains a provision that permits HOVIC to retain a portion of any recovery above $1.44 million. That provision, Zurich argues, is contrary to public policy and renders the settlement unenforceable. Zurich relies on *Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc.*, 890 F. Supp. 1247 (D.N.J. 1995) to support its position.

In *Caldwell*, the parties were in litigation regarding contribution for environmental cleanup costs. They entered into a stipulation whereby the insured assigned any cause of action it had against the insurers to the claimant in exchange for a portion of the net recovery from the insurer. The court invalidated the assignment of claims, holding:

> financial stake in any net recovery by [the insured] from the [] insurers . . . violates the "essence of the [insurance contract]." . . . The financial incentive for the [insured] to maximize [the claimant's] recovery is inconsistent with [the insured's] obligation, which it assumed under the policies issued by the [] insurers, to cooperate in its own defense.

*Id.* at 1260 (citations omitted). Zurich maintains that HOVIC's settlement agreement must be invalidated for the same reason.

HOVIC argues that Caldwell has no application to the instant case because HOVIC has no duty to cooperate in Zurich's defense. As HOVIC points out, insurance policies can include "cooperation clauses . . . to guarantee to insurers the right to adequately prepare their defenses on questions of substantive liability." *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 396 (5th Cir. 1995). The Insurance Contract here, however, includes no such cooperation

clause. Moreover, HOVIC asserts, such a clause would have no meaning in this situation, as Zurich has declined coverage and refused to participate in HOVIC's defense of the underlying litigation.

■ Clearly, HOVIC had no contractual duty to cooperate in the defense of the claims. Although HOVIC had an obligation to act in good faith in the settlement negotiations, the Court finds no convincing evidence that it failed in this obligation in any way.

### c. The Amount of Zurich's Exposure Under the Settlement Agreement

Zurich asserts that it should only be forced to pay the $160,000 that HOVIC paid to settle the claims, not the conditional $1.44 million payment negotiated between HOVIC and the Claimants. Zurich bases its argument on the plain language of the Insurance Contract. As stated heretofore, the interpretation, construction, and legal effect of an insurance policy is a question of law to be determined by the Court. *Coakley Bay Condominium Ass'n v. Continental Ins. Co.*, 26 V.I. 348, 770 F. Supp. 1046, 1050 (D.V.I. 1991).

The Virgin Islands Code specifically provides that, "[e]very insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement, or application attached to and made a part of the policy." 22 V.I.C. § 846. This Court has found that, "absent circumstances indicating a contrary intention of the parties, the language of [an insurance] policy is to be construed in its common, ordinary, and popular sense." *Evanston Insurance Co. v. Treister*, 794 F. Supp. 560, 569 (D.V.I. 1992). The standard to be used is the understanding of an ordinary person. *Id.*

The Insurance Contract between HOVIC and Zurich provides coverage only for sums "which the Insured shall be legally obligated to pay as damages or assumed by the Insured under contract or agreement." Insurance Contract, art. 1, at 4. The Court must construe this language according to its common, ordinary, and popular sense. In the Court's view, the "legally obligated to pay" language is clear and unambiguous: Zurich is liable only for the amounts that HOVIC is legally obligated to pay. Under the

terms of the settlement agreement, HOVIC's only legal obligation is to pay the Claimants $160,000. HOVIC has no legal obligation to pay the conditional payment of $1.44 million unless Zurich pays those funds to HOVIC as a result of this action. In fact, the settlement agreement explicitly states that Claimants "shall have no recourse from HOVIC for any amounts over $160,000" except if HOVIC failed to pursue this action against Zurich. Therefore, the Court finds that the plain language of the Insurance Contract requires Zurich to pay only $160,000 to HOVIC.

This construction is supported by case law from across the country, beginning with *Stubblefield v. St. Paul Fire & Marine Ins. Co.*, 517 P.2d 262, 267 Ore. 397 (Or. 1973) (en banc). In *Stubblefield* the Oregon Supreme Court interpreted "legally obligated to pay" language similar to that contained in the Insurance Contract in this case. The insured had entered into a settlement agreement for $50,000 whereby the claimant would collect $5,000 from the insured and the remaining $45,000 from the insurer. Because the language of the policy made the insurer liable only for the legal obligation of the insured, and because the insured was legally obligated to pay only $5,000, the court held that the insurer was liable only for paying the $5,000 to the insured, not for paying the remaining $45,000 to the claimant. *Id.* at 264. Other courts have either followed *Stubblefield* directly, *see, e.g., Bendall v. White*, 511 F. Supp. 793 (N.D. Ala. 1981 (adopting *Stubblefield* as Alabama law), or have followed the same reasoning, *see, e.g., Tidex, Inc., v. A.L. Commercial Blasting Corp.*, 567 F. Supp. 918, 923-24 (E.D. La. 1993).

Despite the unambiguous language of the Insurance Contract and the various courts' construction of identical or similar language, HOVIC argues that this Court rejected the *Stubblefield*-type construction in *Evanston Ins. Co. v. Treister*, 794 F. Supp. 560 (D.V.I. 1992). The facts of *Evanston* are similar to those of this case. The insured entered into a settlement agreement with a claimant whereby the insured would pay nothing, but the claimant would receive funds from the insured's policy with the insurer. *Id.* at 564. The policy between the insured and the insurer contained nearly identical "legally obligated to pay" language as the Insurance Contract in the instant case. *Id.* at 570. This Court allowed such an arrangement and issued a declaratory judgment against the in-

surer and for the benefit of the claimants. *Id.* at 574-75. In making its ruling, however, the Court did not address the specific issue of whether the "legally obligated to pay" language of the policy limited the amount of the insurer's liability. Rather, the Court simply upheld the settlement agreement without ever addressing whether it may due so under the "legally obligated to pay" language of the policy. *Id.* Therefore, this issue is one of first impression in the Virgin Islands.

■ The Court finds that the unambiguous language of the Insurance Contract, as well as the construction given to similar language in *Stubblefield* and other cases, should control in this case. The amount of Zurich's exposure is limited to $160,000, the amount HOVIC is legally obligated to pay.

### 4. Summary as to Zurich's Motion for Summary Judgment

The Court concludes that Endorsement No. 2 excludes coverage of the burst hose incident, and accordingly will enter an order granting summary judgment in favor of Zurich. In the event that the Court of Appeals finds this conclusion in error, however, this Court will enforce the settlement agreement against Zurich, but only for $160,000.

### C. HOVIC's Motion for Summary Judgment

HOVIC's arguments for summary judgment are as follows: (1) the insurance contract covers the burst hose incident and any resulting liability; (2) coverage is not excluded by Endorsement No. 2; and (3) the settlement agreement between HOVIC and the Claimants was reasonable. The Court decided the first two of these claims in its analysis of Zurich's motion for summary judgment. Zurich contests the third claim. Furthermore, Zurich asserts that HOVIC has not proven that the exposure lasted less than six days, a condition found in Endorsement No. 2, and that the existence of an indemnity agreement between HOVIC and the employer of the Claimants precludes immediate recovery from Zurich. In determining these issues, the same standards for summary judgment apply: summary judgment is appropriate only when "there is no genuine issue as to any material fact." FED. R. CIV. P. 56(c).

## 1. Whether the Settlement Agreement Was Reasonable

■ HOVIC claims that the settlement agreement was reasonable, but Zurich argues that it retains the right to contest this fact at trial. Indeed, case law allows an insurer to raise a question of fact as to the reasonableness of a settlement agreement entered into by the insured. *See, e.g., Vargas v. Hudson County Bd. of Elections*, 949 F.2d 665 (3rd Cir. 1991); *Trustees of University of Pennsylvania v. Lexington Ins. Co.*, 815 F.2d 890 (3rd Cir. 1987); *Hitt v. Cox*, 737 F.2d 421 (4th Cir. 1984). Certainly, such a question raises genuine issues of material fact, precluding summary judgment in HOVIC's favor.

## 2. Whether the Exposure Lasted Less Than Six Days

■ The third condition of Endorsement No. 2 is that restoration of coverage may occur only when the discharge, dispersal, release or escape lasts for six days or less. Insurance Contract, Endorsement No. 2, at 20. HOVIC and Zurich disagree as to the duration of the exposure to the catalyst. To support its claim that the dispersal lasted more than six days, Zurich has provided the Court with depositions and interrogatory responses from the Claimants in their lawsuit against HOVIC. That evidence indicates that, both before and after the burst hose incident, the catalyst was in the air and workers were breathing it for months. This evidence produces a genuine issue of material fact that can be determined only at trial. Accordingly, summary judgment in HOVIC's favor is not appropriate on this basis.[3]

## 3. Whether an Indemnity Agreement Exists to Preclude Zurich's Coverage

■ According to Zurich, the Claimants in the underlying litigation were employees of World Industrial Contractors, Inc., ("World") a subcontractor of HOVIC on the FCCU project. Zurich contends that HOVIC's contract with World provides that World must indemnify HOVIC for losses that involve even the slightest liability on the part of World. Because this indemnity provision

---

[3]Note that Zurich also claims this issue as a basis for denying coverage. Zurich has recognized, however, that it is an issue of fact to be determined at trial. Therefore, Zurich did not raise the issue in its summary judgment motion, but instead relied only on issues of law.

may constitute a source of recovery for HOVIC that could either supplement or completely satisfy HOVIC's claims, Zurich maintains that it has the right to inquire into the factual circumstances surrounding the HOVIC-World contract. To date, however, HOVIC has not complied with Zurich's discovery requests concerning this issue. This, too, is clearly a genuine issue of material fact that precludes summary judgment in HOVIC's favor.

### 4. Summary of HOVIC's Motion for Summary Judgment

Summary judgment in favor of HOVIC is impermissible, as each argument set forth by HOVIC involves a genuine issues of material fact that must be determined at trial.

## III. Conclusions

Endorsement No. 2 precludes coverage of the burst hose incident. Therefore, the Court will enter an order granting summary judgment in favor of Zurich.