**IN RE: TUTU WATER WELLS CONTAMINATION LITIGATION, THIS DOCUMENT RELATES TO TEXACO, INC. AND TEXACO CARIBBEAN, INC. ("TEXACO"), SUCCESSOR TO VERNON MORGAN**

D.C. Civil No. 1996-54(B)

District Court for the Virgin Islands

Div. of St. Croix

November 24, 1999

Addison J. Meyers, Esq., *O'Connor & Meyers, P.A.*, *for Third-Party Plaintiffs*

Charles J. Curran, Esq., Tallahassee, FL, *for Third-Party Plaintiffs*

Treston E. Moore, Esq., St. Thomas, U.S.V.I., *for Third-Party Plaintiffs*

Kimberly Boldt, Esq., *The Boldt Law Firm*, Miami, FL, *for Third-Party Plaintiffs*

Wilfredo A. Geigel, Esq., Christiansted, St. Croix U.S.V.I., *for General Accident co. of Puerto Rico, LTD.*

Denise Francois, Esq., *Hodge & Francois*, St. Thomas, VI, *for CIGNA Corporation, Fireman's Fund Insurance Company, AFIA, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

HARRY P. COHEN, ESQ., *Rosenman & Colin, LLP*, New York, NY, *for CIGNA Corporation, Fireman's Fund Insurance Company, AFIA, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

ROBERT REEDER, ESQ., *Cozen & O'Connor*, Philadelphia, PA, *for CIGNA Corporation, Fireman's Fund Insurance Company, AFIA, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*.

THOMAS MCKAY, III, ESQ., *Cozen & O'Connor*, Philadelphia, PA, *for CIGNA Corporation, Fireman's Fund Insurance Company, AFIA, CIGNA International Corporation and Insurance Company of North America ("CIGNA")*

BROTMAN, *Judge, Sitting by Designation*

## I. INTRODUCTION AND BACKGROUND

This case arises out of an insurance coverage dispute between Third-Party Plaintiffs Texaco Inc. and Texaco Caribbean, Inc., (collectively hereinafter "Texaco") as the Successor to Vernon Morgan, and several purported insurance carriers it claims have breached contracts to insure Vernon Morgan and have refused, in bad faith, to defend and indemnify him against numerous environmental actions. These actions resulted from Vernon Morgan's alleged negligence in allowing hazardous chemicals to be discharged from underground storage tanks at the Tutu Texaco Service Station ("Service Station") into the Turpentine Run Aquifer in St. Thomas, United States Virgin Islands.

Beginning in 1972, Texaco Caribbean Inc., a subsidiary of Texaco Inc. leased property to Morgan from which Morgan operated the Tutu Texaco Service Station. (*See* Statement of Undisputed Material Facts In Support of Fireman's Fund's and Cigna's Motion For Summary Judgment on the Pollution Exclusion ("Undisputed Pollution Exclusion Facts") at ¶ 2). Morgan is the owner, sole

shareholder, and an employee of Tutu Texaco Service Station. In September 1976, Morgan discovered a pipe leak that resulted in a loss of approximately 2,200 gallons of gasoline. (*See id.* at ¶ 16-17). In late 1977, Morgan discovered the loss of approximately 240 gallons of fuel due to a leak in a fuel delivery line. (*See id.* at ¶ 18). After both discoveries, Texaco was apprised of the situation. Additional line leaks resulting in losses of approximately 1,200 and 100 gallons, respectively, were reported in 1980 and 1981. (*See id.* at ¶¶ 19, 21). Another leak was discovered in 1987. (*See* id. at ¶ 24).

In 1989, various claimants instituted litigation against Texaco and Morgan for damages caused by the aforementioned discharges of hazardous substances from the storage tanks and fuel delivery system located at the Site. (*See* Texaco's Appendix to Omnibus Statement of Material Facts at Issue ("Omnibus Facts") at Ex. 1.) Upon receipt of the complaints Morgan sent notification of the claims to the West Indies Insurance Agency, which had issued Morgan's insurance policies. (*See* Texaco's Statement of Material Facts Not at Issue in Support of Motion for Partial Summary Judgment on General Agency and Notice at ¶¶ 2-6.)

Morgan was represented by John Zebedee, Esq. in *Total Vision, Four Winds,* and *Harthman* ("underlying litigation"). Payment for Morgan's defense was originally provided by American Trust Insurance ("ATI") after June 5, 1990. On or about May 1991, ATI refused to continue to provide Morgan a defense in the underlying litigation. (*See* Cigna's Statement of Undisputed Material Facts in Support of Fireman's Fund's and Cigna's Motion for Summary Judgment: Third-Party Plaintiffs' Claims for Bad Faith as a Matter of Law (hereinafter "Undisputed Bad Faith Facts") at ¶¶ 1-3.)

During this time period, Zebedee sought coverage for Morgan from defendant Cigna,[1] who was handling the coverage and administration of policy SMP4296, a garage liability policy with

---

[1] The Court notes that recently, at oral argument held on November 18th, 1999, the parties stipulated on the record that the named defendants AFIA, CIGNA Corporation, CIGNA International Corporation and Insurance Company of North America were dismissed with prejudice from the case while Fireman's Fund Insurance Company ("Fireman's Fund") remained as a defendant. The parties further agreed that any action by Cigna entities would be attributable to defendant Fireman's Fund. Because this stipulation occurred subsequent to the filing of the instant motion, and since the parties agreed that any actions by Cigna entities will be attributable to Fireman's Fund, for purposes of administrative convenience "Cigna," signifies the actions of Third-Party Defendants

$25,000 per occurrence limits. (*See* Cigna's Undisputed Bad Faith Facts at ¶¶ 13-40 & Ex. 13). After numerous correspondence between Zebedee and Cigna employees failed to provide complete details of the relevant policy's terms and conditions, *see id.,* the insurer refused coverage via an October 28, 1991 letter which stated, in pertinent part, that:

> Despite our best efforts . . . we have been unable to produce, nor have you been able to produce, copies of the actual policies issued to Morgan and/or Tutu Texaco. Without more information, we are unable to confirm the existence and/or terms, conditions, limitations or endorsements of these policies. Accordingly, since we cannot determine what coverage may have been written, we are further unable to provide any defense or indemnity to Morgan and/or Tutu Texaco for these claims.

> In the event you are able to locate additional information which might indicate that our further review of these claims is warranted or should you otherwise wish to discuss this matter, please feel free to contact me at the above number.

(Texaco's Appendix to Omnibus Statement of Material Facts at Issue ("Omnibus Facts") at Ex. 66). It is important to note that just prior to its October 28, 1991 refusal letter, Zebedee had contacted Cigna and informed the defendant that Morgan was considering a proposal from Texaco which contemplated Texaco's assumption of Morgan's defense costs in exchange for an assignment of rights. (*See* Ex. 13 of Cigna's Appendix to Cigna's Br.: Plaintiff's Claims for Bad Faith Fail as a Matter of Law).

As litigation concerning the environmental damage continued in the Virgin Islands, Texaco on its own behalf filed an action against numerous insurers in the Superior Court of the State of California for the County of Los Angeles entitled *Four Star Oil & Gas Company, et al. v. Allianz Insurance Company et al.,* Case No. BC 036944 ("California Litigation"). Included among Texaco's claims in the

---

CIGNA Corporation, Fireman's Fund Insurance Company, ("Firemen's Fund"), AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America.

California Litigation were its incurred and anticipated liabilities arising at and from the Site. (*See* Cigna's Statement of Undisputed Material Facts in Support of Fireman's Fund and Cigna's Motion for Partial Summary Judgment Based Upon the Four Star Agreement (hereinafter "Undisputed Four Star Facts") at ¶¶ 7-11. Texaco ultimately agreed to a comprehensive release of environmental coverage claims against various insurance companies in the context of the California Litigation. Specifically, pursuant to an "Agreement of Settlement, Compromise and Release" dated May 10, 1993, Cigna agreed to pay Texaco $20,250,000.[2] (*See* Fireman's Fund's and Cigna's Motion for Partial Summary Judgment Based Upon the Four Star Agreement at Ex. 1 ("Release Agreement")).

Two years after the Release Agreement was executed, Texaco settled all of its outstanding claims against Morgan in an agreement executed June 27, 1995 entitled "Consent To Judgment and Assignment" ("the Assignment"). (*See* Omnibus Facts at Ex. 70). Under the Assignment, Morgan consented to the entry of judgment against him on the underlying actions in the amount of $16,682,392. (Assignment at ¶ 2). Texaco agreed not to execute, record, or collect on its judgment against him. (*Id.* at ¶ 7). In exchange, Morgan agreed to assign to Texaco all claims that Morgan had against "any and all insurance carriers insuring Morgan and/or Texaco Tutu Service Station, for the claims of the Plaintiffs and the crossclaims of Texaco for contribution and indemnity[.]" (*Id.* at ¶ 3).

On December 7, 1995, Morgan filed a Third-Party Complaint against various insurers claiming bad faith and seeking defense costs, punitive damages, and indemnity under the alleged policies issued to Morgan, as well as enforcement of the $16,682,392 consent judgment. On March 2, 1998, this Court found that Texaco, not Morgan, was the real party in interest as "successor" to Morgan. (*See* Order on Motions For Summary Judgment entered

---

[2] In the Release Agreement, "CIGNA" included CIGNA Insurance Company, Insurance Company of North America, Insurance Company of North America (U.K.) Limited, CIGNA Property and Casualty Insurance Company, California Union Insurance Company, Atlantic Employers Insurance Company, CIGNA insurance Company of Illinois, CIGNA Insurance Company of Texas, Pacific Employers Insurance Company, CIGNA Reinsurance Company (U.K.) Limited, Central National Insurance Company of Omaha, and Highlands Insurance Company.

on March 2, 1998) (*See* Opinion On Motions For Summary Judgment dated March 2, 1998). Accordingly Texaco was substituted as a third party plaintiff. (*See* Opinion On Motions For Summary Judgment dated March 2, 1998 at 12)

In its amended third-party complaint, Texaco asserted "bad faith" and 'failure to defend and indemnify claims' against the various insurance companies with which Vernon Morgan had contracted, including Cigna and General Accident. In its amended complaint Texaco seeks, *inter alia*, enforcement of the $ 16,682,392 consent judgment entered between Texaco and Vernon Morgan.

On September 13, 1999 Cigna filed the instant motion, arguing that the consent agreement is unenforceable as a matter of law and therefore it is entitled to summary judgment. The Court heard argument on this and other motions on November 18, 1999. This opinion addresses the issues raised in Cigna's motion regarding the consent judgment's enforceability.

## II. DISCUSSION

## 1. STANDARD FOR SUMMARY JUDGMENT

The standard for granting summary judgment is a stringent but surmountable one. That is, summary judgment is appropriate only when the materials of record "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n.2 (3d Cir. 1996). In deciding whether there is a disputed issue of material fact, the court must grant all reasonable inferences from the evidence in favor of the non-moving party. *Serbin*, 96 F.3d at 69 n.2. The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

Supreme Court decisions mandate that a motion for summary judgment must be granted unless the party opposing the motion "provides evidence 'such that a reasonable jury could return a verdict for the non-moving party.'" *Lawrence v. National Westminster Bank of New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996) (quoting

*Anderson*, 477 U.S. at 248). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Instead, the non-moving party must "by affidavits or by depositions and admissions on file 'make a showing sufficient to establish [that a genuine issue of material fact exists as to each] element essential to that party's case.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir. 1991) (declaring that a non-movant may not "rest upon mere allegations, general denials, or . . . vague statements"). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-50.

## 2. CIGNA'S MOTION: THE CONSENT JUDGMENT IS UNENFORCEABLE

Cigna alleges four reasons why Texaco's consent judgment with Vernon Morgan is unenforceable as a matter of law: 1) the stipulated judgment is collusive in nature; 2) the judgment does not give rise to a "legal obligation to pay damages;" 3) Texaco is not entitled to recover damages in excess of policy limits because Vernon Morgan was never actually obligated to satisfy an "excess verdict"; and 4) Cigna's conduct did not cause the excess liability. (*See* Cigna's brief at 2-3).

Texaco counters these arguments by asserting that: 1) entry of a consent judgment and assignment of rights are sanctioned by Virgin Islands law and any assertions of conspiracy and fraud are insufficient to establish collusion as a matter of law; 2) Cigna's 'legally obligated to pay' argument has been rejected by a majority of the U.S. Jurisdictions and, while there is some caselaw in the Virgin Islands supporting Cigna's position, it is dicta that flies in the face of the leading Virgin Island case on point; 3) Texaco states that the defendant's third and fourth arguments should be rejected because Cigna's refusal to defend Vernon Morgan forfeited its contractual rights to control any defense or settlement proceedings and left the insured free to enter a consent judgment in excess of

policy limits so long as the settlement was reasonable and made in good faith. (*See* Texaco Br. at 2-3.)

## A. Collusion as a Matter of Law

Cigna bases its collusion assertions upon a detailed factual record, which includes, *inter alia*, the following relevant facts:

- On August 14, 1991, a letter from Vernon Morgan's attorney, John Zebedee, informed Cigna that Vernon Morgan was negotiating an agreement with Texaco by which Texaco would assume Morgan's representation in exchange for an assignment of rights against Morgan's insurers. (*See* Cigna Ex. 20)

- A letter from Zebedee dated the same day was sent to Ricks Frazier, in-house counsel at Texaco. The letter outlined the terms of the agreement and instructed that "it is imperative that we finalize our agreement with Texaco as promptly as possible." (Cigna Ex. 25) According to Cigna, Texaco's "only response to this letter was to pay Zebedee's invoices from August 1, 1991 forward." (*See* Cigna Br. at 17)

- On July 13, 1994, Texaco attorney Sonny Meyers sent a strategy letter to Rick Frazier which assessed the viability of Morgan's claims against his insurers and determined that the "method for bringing Mr. Morgan's liability to fruition would be via a consent judgment entered against Mr. Morgan with an assignment to Texaco to pursue any potential claims Mr. Morgan may have against his carriers" (*See* Ex. 36)

- On October 14, 1994, approximately two weeks *prior to* the release of its "demand" letter to Vernon Morgan, Morgan's counsel, John Zebedee, sent a copy of Meyers' letter to Morgan along with an instruction that he review the contents so that the parties could discuss the matter. (*See* Ex. 38)

- On October 27, 1994 Meyers' sent a letter to Zebedee which detailed Morgan's potential liability to Texaco and proposed that "Texaco has agreed to forego the pursuit of its rightful claims against Mr. Morgan . . . if he agrees to the following. First Mr. Morgan must consent to a judgment for the total

amount of his potential liabilities on the crossclaims of Texaco in the amount of $18,382,392.00. Second, he must assign to Texaco all rights and causes of action he may have against any insurance company which wrongfully or in bad faith refused to defend or indemnify him for the liabilities he incurred as operator of the Texaco Tutu Service Station. Third, he must remain responsible for any part of the judgment not satisfied by the recoveries against the insurance carriers who wrongfully and in bad faith refused to defend and indemnify him." (*See* Cigna Ex. 39)

● On June 28th, 1995 a consent judgment was entered against Vernon Morgan in the amount of $16,682,392.00. The agreement included an assignment of Morgan's rights against his insurers, as well as a covenant by Texaco not to execute the judgment against Morgan. (*See* Cigna Ex. 43).

Based on these, and other facts, Cigna alleges collusion as a matter of law.

The crux of Cigna's collusion argument lies in its contention that Morgan assigned his rights to Texaco in 1991, *approximately four years prior to the entry of the consent judgment*. Accordingly the defendant contends that the judgment was not the result of a hard fought negotiation, but rather reflected an attempt by Texaco to unilaterally extend the insurers liability. (*See* Cigna Br. at 30) Asserting that "[n]o court, in any jurisdiction, has recognized the validity of a Consent Judgment where, as here, a pre-existing agreement for the assignment of insurance rights to the claimant has negated the opportunity for any semblance of an arms length negotiation," Cigna urges that the Court deem the agreement collusive as a matter of law. (*Id.* At 30-31).

While Cigna's argument appears persuasive on its face, the Court finds that a factual dispute exists as to when Morgan actually assigned Texaco his rights. While Cigna contends the assignment occurred sometime in 1991, *absent from the record is any formal documentation confirming an agreement was made*. Moreover, Texaco's submissions include the deposition testimony of Ricks P. Frazier and John Zebedee, the principal parties allegedly involved in the 1991 assignment. Both parties contend that the

assignment did not occur until 1995. (*See* Ex. 7 to Omnibus Facts at 62, Dep. of Ricks Frazier; *see also* Ex. 72 to Omnibus Facts at 185, Dep. of John Zebedee). Thus, based on the testimonial evidence submitted by Texaco, a trier of fact could reasonably conclude that there was no assignment until 1995. Therefore, Cigna's claim that it is entitled to summary judgment pursuant to an alleged 1991 assignment must be rejected.

In addition to its pre-existing assignment argument, Cigna advances several other reasons why the consent judgment is collusive in nature. The defendant argues that the percentage of liability that Morgan acknowledged in the consent judgment (approximately 95%) "is unconscionable and by itself taints the entire agreement." (Cigna Br. at 31). This Court disagrees.

In *Evanston v. Ins. Co. Treister*, 794 F. Supp. 560 (D.V.I. 1992), the court addressed similar allegations of a collusive assignment/ consent judgment. The court adopted a standard for assessing allegations of collusion within the context of consent judgments rendered against an insured, providing that

> an insured is not required to establish his actual liability in order to recover the amount of the settlement from an insurance company "so long as . . . a *potential liability* on the facts known to the [insured is] shown to exist, *culminating in a settlement in an amount reasonable* in view of the size of the possible recovery and degree of probability of claimant's success against the [insured]."

*Id.* at 573 (quoting *Damanti v. A/S Inger*, 314 F.2d 395, 397 (2d Cir. 1963)) (emphasis added) (alteration in original). Thus, under *Treister*, the focus of the agreement's reasonableness is based upon the potential, not actual liability, of the insured.

In the instant action, Texaco's claim against Morgan sought over eighteen million dollars in damages. While Virgin Islands' caselaw has noted that "'it is the extent of the defendants' exposure to liability and not mere allegations in the plaintiff's complaint that govern's the appraisal of reasonableness,'" the Court finds that given the nature of the plaintiff's claim against Morgan and the damages incurred by Texaco in the underlying well owner claims,

the amount settled upon was not unreasonable as a matter of law.[3] *Lesville James v. Zurich-American Ins. Co. of Illinois,* No. 1995/117-F, slip op. at 15 (D.V.I. Sept. 9, 1998) (quoting *Vargas v. Hudson County Bd. of Elections,* 949 F.2d 665, 674 (3d Cir. 1991)). Therefore Cigna's argument that the amount stipulated to in the consent judgment renders it collusive as a matter of law must be rejected.

Lastly Cigna contends that the consent judgment was not entered into in "good conscience" since Vernon Morgan knew that Texaco "had no intention of bringing any legal action against Morgan, but instead planned to maximize Morgan's previously assigned insurance rights by entering a consent judgment against him, which they never intended to collect from Morgan." (Cigna Br. at 32). Thus the defendant argues the settlement agreement was necessarily unreasonable, since at the time Morgan entered into it he did not "in good conscience" believe that he was exposed to a potential jury verdict, a requirement addressed by the court in *Treister. See Treister,* 794 F. Supp. at 573 (finding that a consent judgment was reasonable because "[i]n the event that the case went to trial, [the insured] could, in good conscience, expect that a

---

[3] Here, Morgan owned and operated the station from which the alleged contaminants were released. Texaco's eighteen million dollar damage figure was based upon a combination of past and projected future damages incurred pursuant to settlement agreements related to its alleged vicarious liability for the purportedly negligent actions of Morgan. The plaintiff's expert, Joel Holt, asserts that such a dollar figure represents a reasonable damage estimate in light of the circumstances. Moreover, the nature of the claims asserted by the plaintiff, indemnity and contribution claims, would potentially allow Texaco to recover 100% of the damages it incurred. Thus, when Morgan settled for approximately sixteen million, he realistically faced potential exposure to an eighteen million dollar verdict. Therefore, based on these facts, the Court can not conclude that Cigna is entitled to summary judgment on the matter.

Cigna also attacks the agreement's reasonableness on the grounds that Andrew Capdeville, the attorney retained by Morgan to negotiate the consent judgment, was unfamiliar with the substantive area of law involved in the agreement. (*See* Ex. 42 to Cigna's Br., Dep. of Andrew Capdeville at 16-17, 70). Accordingly the insurer argues that Capdeville's actions constitute a failure by Morgan to make a "good faith and objectively reasonable assessment of liability," and therefore under the principles of *Treister* the judgment is unenforceable. (*See* Cigna Br. at 33) The Court notes that the record reflects that Capdeville and his associate Dean Barnes engaged in several conversations with attorney John Zebedee, Morgan's counsel throughout the majority of the litigation, concerning the reasonableness of the proposed agreement. (See Ex. 3 to Cigna's Appendix, Zebedee Dep., Vol. II at 335-37). The Court concludes that these conversations create a reasonable inference that a good faith assessment of liability was made by Morgan, and therefore refuses to conclude that as a matter of law the consent judgment was either unreasonable or entered into in bad faith.

342

verdict [above the agreed settlement amount] might be rendered against him").

■ Cigna cites numerous facts in support of its assertion. However, none of these facts conclusively prove the defendant's allegation that Texaco assured Morgan it never intended to seek an actual judgment against him. Moreover, the nature of Cigna's argument involves questions of intent, an area of the law that courts have determined are best left to the trier of fact. *See, e.g., Provenz v. Miller*, 102 F.3d 1478, 1479 (9th Cir. 1996) ("generally, scienter should not be resolved by summary judgment"); *P.H. Glatfelter Co. v. Voith, Inc.*, 784 F.2d 770, 774 (7th Cir. 1986) (noting that "resolution by summary judgment of the issues raised by an allegation of fraud is often difficult or impossible"). Thus Cigna's claim that the consent judgment is collusive as a matter of law must be rejected.

## B. Legal Obligation to Pay Damages

The policies under which Vernon Morgan seeks coverage contain a provision which provides, in pertinent part, that the insurer "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay." (*See* Omnibus Facts at Ex. 3, 5) Cigna's motion asserts that the consent judgment, which includes a covenant not to execute, relieves Vernon Morgan of any legal obligation to pay under the language of the policy. Thus the defendant contends that under Virgin Islands caselaw, Texaco can not enforce the judgment against Cigna.

The insurer bases its claim upon a recent Virgin Islands decision which stated that the insurer was only liable to the claimant "for the amounts that the [insured] is legally obligated to pay" and therefore claimant's covenant not to execute against the insured barred recovery against the insurer because the insured was never obligated to pay the judgment. *Amerada Hess Corp. v. Zurich Ins. Co.*, 51 F. Supp. 2d 642, 654 (D.V.I. 1999). However, while the *Amerada Hess* court reasoned that an insurer could not be held liable under the "legally obligated to pay" language in the contract, it is important to note that the court ultimately granted summary judgment for the defendant based on an exclusionary

clause in the insurance policy, not the express language in the agreement. *See id.* at 652.

Further, the *Amerada Hess* opinion appears inconsistent when viewed in light of the *Treister* decision. In *Treister* the court upheld the full amount of a consent judgment and covenant not to execute despite similar "legally obligated to pay" language in the policy. *Compare Treister*, 794 F. Supp. at 574 *with* Amerada Hess, 51 F. Supp. 2d at 654 (noting that the policy in dispute in *Treister* had similar 'legally obligated to pay' language).

After reviewing the caselaw and relevant policy considerations, the Court concludes that the *Treister* view, which is consistent with the common law as understood throughout the United States,[4] represents the better law. Allowing an insurer, after it abandoned its duties under the insurance agreement, to thereafter assert as a defense the language of the very contract it refused to honor would lead to an unjust result inconsistent with the principles of Virgin Islands law. *See Cay Divers, Inc. v. Raven*, 812 F.2d 866, 870 (3d Cir. 1987) (applying Virgin Island law and refusing to enforce a litigation clause in an insurance agreement because the insurer's actions forced the insured to "proceed as best it could with its own defense" and therefore the insurer "cannot now complain" that the insured failed to honor its contractual obligations).

■ Additionally, the Court finds that enforcement of "legally obligated to pay" language in insurance agreements exposes the insured to unfair risks, because it effectively precludes the abandoned insured from settling within policy limits with injured third parties. Thus, the Court holds that the 'legally obligated to pay' language in the policy does not prevent Texaco from seeking recovery against Cigna.

---

[4] An examination of the issue reveals that the majority of courts do not preclude a third party's recovery against the insurer on 'legally obligated to pay' grounds when the third party asserts its rights against the insurer pursuant to an assignment and a covenant not to execute. *See, e.g., Gray v. Grain Dealers Mut. Ins. Co.*, 276 U.S. App. D.C. 388, 871 F.2d 1128, 1133 (D.C. Cir. 1989); *Garcia v. American Phys. Ins. Exch.*, 812 S.W.2d 25, 32-33 (Tex. Ct. App. 1991), *rev'd on other grounds*, 876 S.W.2d 842 (Tex. 1994); *Auto-Owners Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 547 So. 2d 148, 152 (Fla. Ct. App. 1989). .

## C. Recovery in Excess of Limits

In the case at bar, Texaco requests compensatory damages for the consent judgment's full amount $16,682,392, despite the fact that the per occurrence limit of the relevant Cigna policy is only $25,000. Thus the plaintiff seeks to recover against the insurer, pursuant to a stipulated judgment and covenant not to execute, an amount that exceeds the insurer's policy limits by over 600 times the $25,000 limitation. In its brief Cigna argues that because Morgan's liability was not the result of an excess verdict rendered against him, but rather the consequence of a consent judgment coupled with a covenant not to execute, the insured did not suffer any actual damages in excess of the policy limits, and therefore the plaintiff is not eligible to recover more than the limits of the policy. Cigna's assertion, however, is contested by Texaco, which argues that regardless of the manner in which the judgment is obtained, an insurer's failure to defend exposes it to the full amount of any judgment rendered against the insured, including amounts in excess of policy limits.

### Virgin Islands Law

■ Virgin Islands caselaw clearly establishes that, as long as the agreement is reasonable, an insured may seek indemnification against its insurer for settlements reached with injured third parties. See *Cay Divers*, 812 F.2d at 870-71. In addition, Virgin Islands' courts have consistently allowed third parties to enforce against insurers, within policy limits, consent judgments that are conditioned upon the third party's covenant not to execute against the insured. *See Treister*, 794 F. Supp. at 574; *Lesville James*, No. 1995/117-F, slip op. at 14 (noting that "the fact the injured party agrees to seek relief from the insurer only, and not from the insured, does not vitiate the agreement").

However, there appears to be no Virgin Islands' case on point addressing the issue of whether a third party can recover against an insurer *in excess of policy limits* where the insured's liability was incurred pursuant to the entry of a stipulated judgment which included a covenant not to execute. Thus the question of whether an insurer can be held liable in excess of policy limits under such an agreement represents a matter of first impression for the court.

Title 1, section 4 of the Virgin Islands Code provides that:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

V.I. Code Ann. tit. 1, § 4 (1995). As discussed above, research reveals no Virgin Islands law on point which addresses this issue. Nor does it appear that the restatements address this specific situation. Accordingly, the Court looks to the common law of the United States for guidance.

Numerous jurisdictions in the United States have held insurers liable to the insured for amounts in excess of policy limits when the insurer's breach of its duty to defend has resulted in an excess verdict rendered against the insured. *See, e.g., Newhouse Citizens v. Security Mut. Ins. Co.*, 176 Wis. 2d 824, 501 N.W.2d 1, 7 (Wis. 1993); *Safeway Moving & Storage Corp. v. Aetna Ins. Co.*, 317 F. Supp. 238, 246 (E.D.Va 1970); *Miller v. Elite Ins. Co.*, 100 Cal. App. 3d 739, 161 Cal. Rptr. 322, 331 (Cal. Ct. App. 1980). Research, however, has revealed only a handful of cases in which third parties, seeking to enforce a consent judgment which included a covenant not to execute against the insured, have been entitled to recover against an insurer in excess of policy limits. *See, e.g., Greater New York Mut. Ins. Co.*, 85 F.3d 1088 (3d Cir. 1996).

It is important to note that, while the above mentioned cases allowed an injured third party to recover in excess of policy limits, *all of these cases involved a post-verdict assignment of rights by the insured*. Thus at some point *prior to* the insured's assignment, the insured was faced with the harsh reality that it was financially accountable to the judgment creditor for an outstanding verdict in excess of policy limits. This represents an important distinction from the instant matter, where the insured's liability was effectively extinguished at the very moment it was acknowledged.

An examination of the relevant caselaw reveals not one instance in which a third party has been entitled to recover against an insurer in excess of policy limits pursuant to a pretrial consent judgment which included an assignment coupled with a covenant not to execute. Moreover, the jurisdictions that have considered these types of arrangements have expressly declined to enforce them, reasoning that "'[t]o recover more than the policy limits from the insurer, the judgment creditor must assert the insured's injury. If the judgment cannot be enforced against the insured, no such injury exists.'" *Willcox v. American Home Assurance Co.*, 900 F. Supp. 850, 857 (S.D. Tex. 1995) (quoting *Whatley v. Dallas*, 758 S.W.2d 301, 310 (Tex. Ct. App. 1988). The reasoning of *Willcox* has been adopted and applied by other courts. *See Miller v. Shugart*, 316 N.W.2d 729, 734 n.5 (Minn. 1982) (concluding that the insured was not entitled to assert a cause of action against its insurer for the excess liability it acknowledged within a stipulated judgment containing a covenant not to execute because "the insureds are not personally harmed by [the insurer's] failure to pay the amount of the judgment in excess of the policy limits"); *Clement v. Prudential Property and Cas. Ins. Co.*, 790 F.2d 1545, 1547-48 (11th Cir. 1986) (refusing to hold an insurer liable in excess of policy limits when an injured third party sought to enforce a pre-trial stipulated judgment coupled with a covenant not to execute).

While the available authority is limited, it nonetheless expresses a clear intent that the type of judgment involved in the instant matter should not be enforced in excess of policy limits. Thus, it appears that Texaco is asking the Court to adopt a position that is contrary to the relevant caselaw. Such a decision would require the Court to ignore the directive of Title 1, Section 4 of the Virgin Islands Code, which instructs a court to apply the common law of the United States when there is neither a local law nor restatement on point. This Court refuses to do so. Moreover, for the additional reasons discussed below, the Court holds that Texaco's entitlement to compensatory damages shall be limited to the extent of coverage proscribed by the policy at issue in the case, plus attorney's fees.

The Court finds the instant matter analogous to the situation presented to the court in *Willcox v. American Home Assurance Co.*, 900 F. Supp. 850 (S.D. Tex. 1995). In *Willcox*, the plaintiff and

defendant insured entered into a $10,000,000 pre-trial consent judgment which contained a covenant not to execute. *See id.* at 854. Included within the agreement was an assignment of the defendant's rights against its insurer, from whom the insured had obtained a $500,000 policy. *See id.* Shortly after the assignment, the plaintiff sought enforcement of the judgment against the insurer, asserting that the insurer failed to defend the insured. *See id.* at 855. The court refused to enforce the agreement above the policy limits, noting that "the existence of a covenant not to execute . . . precludes recovery in excess of policy limits." *Id.* at 857.

While the *Willcox* court refused to allow an excess recovery, it did allow the plaintiff to recover within the policy limits, reasoning that the proceeds of an insurance contract represent an asset of the insured that the third party may execute upon. *See id.* Cautioning against the enforcement of excess judgments entered pursuant to covenants not to execute, the court explained that "'allow[ing] the creditor to release the insured from liability for such excess damages [pursuant to a covenant not to execute] without effecting the release of the insurer *would give the creditor and insured the power unilaterally to extend the insurer's liability. This would defeat, not serve, public policy.'" Id.* (emphasis added) quoting *Whatley*, 758 S.W.2d at 310).

Similar to the *Willcox* plaintiff, Texaco is seeking to utilize a pretrial consent judgment coupled with a covenant not to execute as a vehicle to expose an insurer to liability for an amount substantially in excess of its policy limits. The very nature of the agreement provides an atmosphere in which the insured would have little reason to contest any amounts of excess liability; as long as the third party would agree not to execute on the judgment, the actual amount would be irrelevant. Such an agreement infringes upon the important public policy concerns touched upon by the *Willcox* court because it dilutes the adversarial context of settlement negotiations while at the same time allowing the insured and third party to unilaterally extend the liability of the insurer beyond the boundaries contemplated by the contract. In addition it results in an injury that, from the Court's viewpoint, is fictional in nature, because any excess liability incurred by Morgan at the time the consent judgment was entered was *simultaneously extinguished* with its entry.

The plaintiff, nevertheless, contends that Morgan is still damaged in the amount of the policy excess because technically a judgment has been recorded against him. Texaco cites cases which distinguish the instant agreement, which involved a covenant not to execute, from those in which an assignment was procured via a release, a situation which courts have rejected as a basis for excess liability. *See, e.g., Romstadt v. Allstate Ins. Co.*, 844 F. Supp. 361, 366-67 (N.D. Ohio 1994). The Court finds this a distinction without a difference, since the agreement involved in the instant matter provides *no circumstances* by which Morgan would be held liable in excess of the policy limits. Thus, for all intents and purposes, the covenant operated as a release and Morgan was never actually damaged by the $16,682,392 judgment he consented to. Therefore the Court concludes that, like the plaintiff in *Willcox*, Morgan never suffered an actual injury in excess of his coverage limits and therefore the plaintiff is precluded from seeking redress from Cigna for amounts in excess of the policy.

Texaco, however, contends that the Court should not adopt such an approach, arguing that once an insurer breaches its duty to defend, it is liable for any judgment rendered against the insured so long as it is reasonable and made in good faith. (*See* Texaco Br. at 18-20). The plaintiff's argument, however, relies on a broad principle that has never been adopted in this narrow context, and in fact has been expressly rejected by courts which have applied it to facts similar to the instant case.

Additionally, the Court finds it significant that the *Willcox* court had at its disposal the same good faith/reasonableness test adopted by the Virgin Islands in *Treister*, yet refused to apply it in instances where excess liability is incurred pursuant to a pre-trial assignment of rights coupled with a covenant not to execute. This decision leads this Court to but one conclusion, that the *Willcox* court felt the overwhelming policy considerations (i.e. the potentially limited extension of insurer liability and the lack of actual damage incurred on behalf of the insured) militated against the application of such a test, which removes from the trier of fact the ability to determine the actual amount of damages and instead substitutes an amount agreed to by two parties, neither of which will be financially burdened by the figure arrived at. While this

Court concurs that enforcing such agreements within the context of coverage limits advances public policy, it concludes that in the boundless arena of excess liability it does not. Thus, the Court holds that, consistent with the caselaw as understood throughout the United States, Texaco may not recover in excess of Cigna's policy limits and therefore Cigna's liability to Texaco for compensatory damages resulting from the consent judgment shall be confined within the $25,000 policy limits.

In addition to comporting with the current state of U.S. caselaw, the Court finds that this result is consistent with the general principles of insurer liability espoused in Treister and other Virgin Island cases. In both *Treister* and *Lesville James*, the court held that the third party was entitled to recover against an insurer pursuant to a pre-trial consent judgment coupled with a covenant not to execute that was within policy limits. Moreover, an examination of *Treister*'s language appears to confine the scope of recovery in such instances to the limits of the policy. Addressing the issue of insurer liability under the judgment, the *Treister* court noted that when the insurer declined coverage, the insured "had the right to enter into a reasonable settlement with the Government, and to recover, *within policy limits*, the amount of that settlement." *Treister*, 794 F. Supp. 560, 573-74 (emphasis added). Thus it appears that this Court's decision to similarly confine Texaco's compensatory damages within the ceiling of the insurers' policies comports with the rationale of *Treister*, which expressly limited to policy amounts, any recovery from consent judgments obtained pursuant to pretrial assignments coupled with covenants not to execute. Further, the Court notes that, due to the unique considerations involved, this decision should be limited solely to the type of agreement at issue in the instant matter.

### D) Breach as Proximate Cause

Lastly, Cigna contends that the testimony of John Zebedee confirms that one of the plaintiffs, Four Winds, would not have settled for an amount within the policy limits, and therefore based on the Fifth Circuit case of *Liberty Mutual Fire Ins. Co. v. Canal Ins. Co.*, 177 F.3d 326 (5th Cir. 1999) Cigna's breach could not, as a matter of law, be considered the proximate cause of the excess judgment.

However, in light of the Court's determination that Cigna's liability for compensatory damages is confined within the boundaries of the insurance policy, the Court need not, and does not, address this issue.

## III. CONCLUSION

For the reasons discussed above, the Court rejects Cigna' contention that the consent judgment is unenforceable as a matter of law. However, the Court finds that it is enforceable against the insurers only to the extent of the policy limits. Thus Texaco's potential compensatory damage recovery shall be limited to the amount of the applicable policy, plus reasonable attorney's fees. Therefore, the Court finds that Cigna's motion for summary judgment shall be denied in part and granted in part. An order shall be issued accordingly.

THIS MATTER having come before this Court on Defendants' Fireman's Fund Insurance Company, Cigna Corporation, AFIA (improperly designated as AFIA Worldwide Insurance), Cigna International Corporation and Insurance Company of North America's (hereinafter "CIGNA")[5] summary judgment motion regarding enforcement of the consent judgment entered between plaintiff TEXACO, INC. and TEXACO CARIBBEAN, INC., ("Texaco") Successor to Vernon Morgan, and Vernon Morgan;

The Court having reviewed the record and the submissions of the parties; and

Having heard argument on the matter on November 18th, 1999; and

For the reasons stated in the Court's opinion of this date;

---

[5] The Court notes that recently, at oral argument held on November 18th, 1999, the parties stipulated on the record that the named defendants AFIA, CIGNA Corporation, CIGNA International Corporation and Insurance Company of North America were dismissed with prejudice from the case while Fireman's Fund Insurance Company ("Fireman's Fund)" remained as a defendant. The parties further agreed that any action by Cigna entities would be attributable to defendant's Fireman's Fund. Because this stipulation occurred subsequent to the filing of the instant motion, and since the parties agreed that any actions by Cigna entities will be attributable to Fireman's Fund, for purposes of administrative convenience "Cigna," signifies the actions of Third-Party Defendants CIGNA Corporation, Fireman's Fund Insurance Company, ("Firemen's Fund"), AFIA, an unincorporated association, improperly designated as AFIA Worldwide Insurance, CIGNA International Corporation and Insurance Company of North America.

351

IT IS this 24 day of November, 1999 HEREBY

ORDERED that CIGNA's Motion for Summary Judgment seeking that the Court refuse to enforce the Consent Judgment is DENIED with respect to Defendant's claims that it is unenforceable as a matter of law; AND IT IS FURTHER

ORDERED that CIGNA's Motion for Summary Judgment is GRANTED with respect to Defendant's request that Texaco be precluded from recovering as part of compensatory damages the Consent Judgment amounts in excess of policy limits.

No costs.