

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-6-2002

# Amerada Hess Corp v. Zurich Ins Co

Precedential or Non-Precedential:

Docket 99-3505

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Amerada Hess Corp v. Zurich Ins Co" (2002). *2002 Decisions.* Paper 155.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 99-3505 and 99-3512

AMERADA HESS CORPORATION;
HESS OIL VIRGIN ISLANDS CORPORATION

PAUL THOMPSON; JERAL STOKER; ESTATE OF
ERNEST ISENBERG; JAMES MCKINLEY;
REVEL CHELETTE, JR.; PATRICK BUNCH;
EDDIE BANNON,
Intervenors

v.

ZURICH INSURANCE COMPANY

PAUL THOMPSON; JERAL STOKER; ESTATE OF
ERNEST ISENBERG; JAMES MCKINLEY;
REVEL CHELETTE, JR.; PATRICK BUNCH;
EDDIE BANNON,
Appellants at No. 99-3505

AMERADA HESS CORPORATION;
HESS OIL VIRGIN ISLANDS CORPORATION,
Appellants at No. 99-3512

Appellate Division of the District Court for the
Virgin Islands, Division of St. Croix
Civil No. 97-cv-00035
District Judge:  Honorable Raymond L. Finch

Argued: May 14, 2001
BEFORE: McKEE, RENDELL and BARRY, Circuit Judges
(Opinion Filed: March 6, 2002)

ROBERT H. SHULMAN, ESQ. (Argued)
Lowery & Simon
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

MINDY G. DAVIS, ESQ.
Lowery & Simon
1299 Pennsylvania Avenue, N.W.
Washington, D.C.  20004

GEORGE H. LOGAN, ESQ.
Nichols, Newman, Silverlight, Logan & D'Eramo
1131 King Street, Suite 204
Christiansted, St. Croix, USVI  00820

Attorneys for Appellants

K. GLENDA CAMERON, ESQ. (Argued)
Law Offices of Lee J. Rohn
1101 King Street, Suite 2
Christiansted, St. Croix, USVI  00820

LEE J. ROHN, ESQ.
Law Offices of Lee J. Rohn
1101 King Street, Suite 2
Christiansted, St. Croix, USVI  00820

THOMAS H. HART, ESQ.
Alkon, Rhea & Hart
2115 Queen Street
Christiansted, St. Croix, USVI  00820

Attorneys for Appellant-Intervenors

JOHN. B. WYSS, ESQ. (Argued)
Wiley, Rein & Fielding
1776 K Street, N.W.
Washington, D.C.  20006

KEITH U. KUDER, ESQ.
Wiley, Rein & Fielding
1776 K Street, N.W.
Washington, D.C.  20006

Attorneys for Appellee

## OPINION

McKEE, Circuit Judge.

Hess Oil Virgin Islands Corporation and its parent company, Amerada Hess Corporation (collectively "HOVIC") sued Zurich Insurance Company seeking coverage under an insurance policy for injuries some workers suffered in an explosion at HOVIC's St. Croix oil refinery.  Zurich denied coverage under the policy it had issued to HOVIC, and HOVIC eventually settled the claims that the injured employees had filed against their employer.  Thereafter, HOVIC sued Zurich in an attempt to recover under its insurance policy.  The district court concluded that HOVIC's claim was unambiguously excluded from coverage under Zurich's policy, and granted Zurich's motion for summary judgment. For the reasons that follow, we will reverse.

## I. FACTS

In 1991, HOVIC began constructing an addition to an existing oil refinery on the island of St. Croix, United States Virgin Islands. This involved the construction of a Fluid Catalytic Cracking Unit ("FCCU"), also known as a "cat cracker." As the name suggests, the unit was to be used in the "cracking" phase of the refinery process. HOVIC contracted with Zurich Insurance Company to provide insurance coverage for the FCCU construction project. The insurance contract was entitled, "Hess Oil Virgin Islands Corporation (HOVIC) Primary General/Third Party Liability Policy, Fluid Catalytic Cracking (FCCU Project) and Related Activities." App. at 242.

                    A. The Terms of The Insurance Contract

The insurance contract contains both general terms and conditions and specific endorsements. The general terms and conditions set forth the basic coverage as explained in Articles 1 through 9 of the policy. The attached endorsements address special situations in which coverage may be limited or excluded, for example, "Nuclear Energy Liability Exclusion Endorsement" or "Completed Operations/Products Liability Extension" and qualifies some of the terms and conditions in Articles 1 through 9.

Pursuant to the general terms of the policy, in exchange for an annual premium of $1 million, Zurich agreed to pay HOVIC for "all sums which [HOVIC] shall be legally obligated to pay as damages... on account of personal injuries, including death... caused by or arising out of each occurrence during the policy period...." App. at 246. An "occurrence" is defined as: "...an accident... which results in bodily injury or property damage neither expected nor intended from the standpoint of [the insured]." App. at 252. The policy offered $2 million in coverage per occurrence, and included:

> the total sum [that] the insured pays or becomes obligated to pay
> by reason of Personal Injury... either through adjudication or
> compromise, and shall also include hospital, medical and funeral
> charges and all sums paid as salaries, wages, compensation, fees,
> charges, and law costs, premiums on attachment or appeal bonds,
> interest, expenses for doctors, lawyers, nurses and investigators
> of claims and persons, and for litigation, settlement adjustment
> and investigation of claims and suits which are paid as a
> consequence of any loss occurrence covered hereunder...

App. At 253-54. The general terms of the policy also required HOVIC to notify Zurich of

an occurrence "as soon as practicable." The policy stated:

> Whenever the Insured's manager of insurance administration has
> information from which he may reasonably conclude that a loss
> occurrence covered hereunder is likely to involve this policy...
> notice shall be sent as soon as practicable to the Insurer.

App.  at 254.

The "Seepage, Pollution and Contamination Clause" at issue here is one of 14 endorsements that specifically limit or exclude coverage under the general terms and conditions of the policy.   That endorsement (also referred to as "Endorsement 2") specifically provides as follows:

[t]his insurance does not cover any liability for:

> Personal Injury or Property Damage arising out of the discharge,
> dispersal, release or escape of smoke, vapors, soot, fumes, acids,
> alkalis, toxic chemicals, liquids, or gases, waste materials or
> other irritants, contaminants or pollutants into or upon land, the
> atmosphere or any water course or body of water; but this
> exclusion does not apply if such discharge, dispersal release or
> escape meets all of the following conditions:
>
> > a.   The discharge, dispersal, release or escape must be neither
> > expected nor intended by [HOVIC], and
> > b.   The inception of the discharge, dispersal, release or escape
> > must take place during the policy period, and
> > c.   The discharge, dispersal, release or escape must not
> > continue for more than six days, and
> > d.   The discharge, dispersal, release or escape must be
> > reported to the insurer within 30 days from the inception
> > of the discharge, dispersal, release or escape.

App. 262.

B. The Explosion.

On August 9, 1993,  a hose from a delivery tank truck burst while catalyst was being pumped into the FCCU, and catalyst sprayed out for about five to ten minutes. Despite the short duration of the discharge, some workers employed by the subcontractor at the FCCU were directly exposed to the catalyst.  A short time later, some of them began complaining of various ailments including sore throat, chest irritation, and vomiting of blood.  The foreman was allegedly notified of the incident but no one notified Zurich at that time.  Similarly, HOVIC did not receive any formal complaints or requests for compensation from the exposed workers.

On October 24, 1993, over two months after the accident, 11 workers who had been exposed sued HOVIC. alleging physical injuries due to their exposure to the catalyst.  When one of the original plaintiffs died, his heirs brought a second suit on behalf of his estate.  Except for the allegations relating to the death of the one worker, the two complaints were virtually identical.  On November 8, 1993, three days after it was served with the first complaint, and again on November 10, 1993, HOVIC notified Zurich of the lawsuits and requested coverage.  That notice was more than 90 days after the incident that caused the injuries.

By letters dated October 4, 1994 and May 30, 1995, Zurich denied coverage.  The denial was premised on the third and fourth conditions of Endorsement No. 2. Specifically, Zurich asserted that the exposure to the catalyst continued for less than six days, and HOVIC had failed to report the burst hose incident within thirty days from the discharge, dispersal, release or escape of the catalyst.

### C. Settlement of the Underlying Lawsuits

On April 28, 1997, HOVIC settled the pending lawsuits for up to $1.6 million. Under the terms of the agreement, HOVIC paid $160,000 in cash from its own funds and agreed to file suit against Zurich to force it to pay the remaining $1.44 million under the insurance contract. If HOVIC prevails in the insurance coverage litigation, the agreement requires HOVIC to pay plaintiffs the remainder of the $1.6 million settlement.  If HOVIC recovers  more than $1.44 million, it will first recover the $160,000 already paid to the plaintiffs, and plaintiffs will receive the balance of the recovery up to $1.44 million.  If the recovery exceeds $1.44 million, the amount above that figure is to be split into two equal shares with one share going to HOVIC, and the remaining share being divided equally among the various plaintiffs.

Pursuant to that agreement, HOVIC filed this declaratory judgment action against Zurich in 1997 in the United States District Court for the Virgin Islands. The individual claimants thereafter intervened as plaintiffs.  After limited discovery, HOVIC and Zurich filed cross-motions for summary judgment.  Zurich argued that the pollution exclusion provision  precluded coverage, and that  HOVIC could not satisfy any of the conditions

that would prevent that exclusion from operating including the requirement of notification within 30 days of the "occurrence."  Zurich also argued that, even if it were liable under the policy, its exposure was limited to the $160,000 HOVIC paid to settle the claim, and not the conditional amount of $1.44 million that HOVIC was seeking under the settlement agreement.

In HOVIC's cross-motion for partial summary judgment, HOVIC argued that the pollution exclusion provision did not apply because the injury to the workers was precisely the type of risk covered by Zurich's FCCU Construction Project Policy as an "occurrence."  HOVIC also argued that it notified Zurich promptly under the general terms of the insurance contract and that any delay in notification was irrelevant because Zurich was not prejudiced by the timing of the notice.  Finally, HOVIC argued that Zurich was liable under the policy for the full amount of the workers' injuries, and that the policy recovery could not be capped at $160,000 given a valid two-tiered settlement.

The district court granted Zurich's motion for summary judgment, and denied HOVIC's motion for partial summary judgment; and this appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C.  1332. We have jurisdiction pursuant to 28 U.S.C.   1291 as this is an appeal of a final order of the district court.  We afford plenary review to a grant of summary judgment. Pearson v. Component Technology Corp., 247 F.3d 471,482 (3d Cir. 2001).  Our review of the district court's legal interpretation of the insurance contract is also plenary.  Patterson v. American Bosch Corp., 914 F.2d 384, 387 (3d Cir. 1990).

## III. DISCUSSION

HOVIC insists that it was paying a premium of $1 million per year to insure against just this type of accident, that it is unreasonable to interpret its policy with Zurich in a manner that excludes coverage for the very risk it was attempting to cover, and that the language of the policy does not support reading such a sweeping exclusion into an endorsement to its general risk policy.

HOVIC argues that the conflict between the coverage afforded under the general terms and conditions of the policy on the one hand, and the pollution exclusion in

Endorsement No. 2 on the other hand, creates an ambiguity. HOVIC asks us to resolve this ambiguity in favor of coverage arguing that this policy was intended to exclude only the cost of traditional environmental "spills" or discharges one normally associates with environmental discharge. Under HOVIC's interpretation, such costs are excluded under the Endorsement unless the four conditions contained therein are satisfied. In that event, according to HOVIC, the exclusion in the Endorsement does not operate, and Zurich is still obligated to pay for contamination and clean up. Zurich insists upon a literal interpretation of the same language in Endorsement No. 2 and argues that it means that any injury resulting from any discharge is excluded from coverage.

HOVIC's interpretation is supported by both the regulatory history of the Endorsement and judicial interpretation of it. Several courts have concluded that "the predominant motivation in drafting an exclusion for pollution-related injuries was the avoidance of the 'enormous expense and exposure resulting from the 'explosion' of environmental litigation.'" American States Ins. Co. v. Koloms, 687 N.E.2d 72, 81 (Ill. 1997) (emphasis in original, citations omitted); Doerr v. Mobil Oil Corp., 774 So.2d 119, 132 (La. 2000) (accepting that the pollution exclusion clause "was originally designed to exclude from coverage only that property and personal damage which resulted from traditional forms of pollution.").

However, other courts have interpreted such endorsements in a manner that is consistent with the position Zurich urges us to take here. Those courts have focused on the precise language of the exclusion clause itself, and have concluded that the exclusion has a much broader reach and excludes all injuries related to exposure to materials the policy defines as "pollutants." See Reliance Ins. Co. v. Moessner, 121 F.3d 895 (3d Cir. 1997) (applying Pennsylvania law). As the district court correctly noted here, "the source of the disagreement within the jurisprudence seems to lie in the fact that the language of the clause is 'quite specific' on its face, and yet a literal interpretation of that language results in an application of the clause which is 'quite broad.'" Dist. Ct. Op. at 12, citing American States v. Koloms, 687 N.E.2d 72, 78 (Ill. 1997).

After analyzing the conflicting positions of HOVIC and Zurich, the district court concluded that the interpretations offered by both were "compelling," and that the strength of each interpretation reflected the divergence of jurisprudence of the various courts that have interpreted this language. Nevertheless, the court concluded that Zurich's policy was unambiguous and enforced what it believed was a literal reading of its provisions. In doing so, however, the court failed to realize that "conflicting interpretations of the policy is strongly indicative of th[is] policy's essential ambiguity." New Castle County v. National Union Fire Ins. Co. of Pittsburgh, PA 174 F.3d 338, 347 (3d Cir. 1999).

The very fact that HOVIC and Zurich were able to offer conflicting, yet "compelling," interpretations establishes the essential ambiguity in this policy. Where "there is more than one reasonable reading of a policy provision ...that provision must be construed against the insurance company which has drafted it." Buntin v. Continental Ins. Co., 583 F.2d 1201, 1207 (3d Cir. 1978) (emphasis supplied). Moreover, as we have previously stated in interpreting an insurance policy under Virgin Islands law, any ambiguity in an insurance policy is to be "construed against the insurer, and in a manner which is more favorable to coverage." Id. Thus, under Virgin Islands law, "[i]f the insured proffers a reasonable interpretation of an ambiguous term, then that term controls and the insured is entitled to judgment as a matter of law so long as the undisputed facts fall within the purview of the meaning offered by the insured." In re Tutu Wells Contamination Litigation, 78 F.Supp 2d 456, 466 (D.V.I., 1999). Here, there are no disputed material facts outside the interpretation offered by HOVIC, and we therefore hold that HOVIC is entitled to judgment as a matter of law.

In addition, we note that our conclusion that HOVIC is entitled to judgment as a matter of law is consistent with the reasonable expectations of these parties as evidenced by the language of the policy. See Oritani Savings and Loan Assoc., v Fidelity and Deposit Co. of Maryland, 989 F.2d 635 (3rd Cir. 1993) (applying New Jersey law). In Oritani Savings and Loan we noted that insurance policies are to be interpreted in a

manner that is consistent with the parties' reasonable expectations. Id., at 638. After noting the problems that often arise from the technical nature of insurance policies we stated that, "[c]overage will be provided if policy language is 'insufficiently clear to justify depriving the insured of [its] reasonable expectation that coverage would be provided'" (quoting Sparks v St. Paul Ins. Co., 100 N.J. 325, (1985)). "In most cases, 'the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations.'" Medical Protective Company, 198 F.3d at 106 (applying Pennsylvania law), citing Moessner, 121 F.3d at 903.

Here, Zurich's interpretation of Endorsement No. 2 would not only result in an application that "is 'quite broad,'" as the district court noted; it would result in an exclusion that would swallow the very coverage that Hess was paying for. As noted above, Endorsement No. 2 excludes coverage for injuries and damage resulting from the "discharge, . . . [of all toxic materials or irritants] . . .into or upon land, the atmosphere or any water course or body of water . . ." unless certain conditions are satisfied. Webster's New International Dictionary defines "atmosphere" as including: "the whole mass of air surrounding the earth . . . the air of a given place or locality . . . ." Thus, if the policy excludes damages for injury or loss resulting from discharges "into or upon the land," water, and air, there is precious little space where the insured risk might occur. Therefore, the interpretation that Zurich insists upon, and that the district court adopted, would have the practical effect of excluding coverage for all of HOVIC's business activities (assuming an injury due to "discharge," etc.) as any discharge would have to occur on land, or in the Earth's atmosphere. Here, a hose burst, and toxic materials were released into the air (i.e. "atmosphere") thereby injuring some workers. We can not agree that HOVIC and Zurich intended to exclude such injuries under Endorsement No. 2 while affording coverage for liability resulting from industrial accidents on HOVIC's premises. HOVIC is, after all, in the business of handling toxic materials.

Zurich attempts to counter this result by arguing that the HOVIC's policy resulted from involved negotiation between sophisticated parties who were well aware of the

scope of coverage they were bargaining for.  However, HOVIC was paying for something
more than the mere illusion of coverage.  Yet, under Zurich's interpretation, that is all
HOVIC received for its $1 million per year premium. We do not believe that HOVIC, a
company whose business involved handling and processing toxic materials, consciously
negotiated an insurance policy with an annual premium of $1 million and intended to
exclude damages resulting from all discharges of toxic materials anywhere on land, air or
sea.  See Ducote v Koch Pipeline, 730 So. 2d 432, 436 (La. 1999) (applying Louisiana
law the court stated: "An insurance policy should not be interpreted in an unreasonable or
a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably
contemplated by its terms or so as to achieve an absurd result."). See also Dodson v St.
Paul Insurance Co., 812 P.2d 372, 376 (Okla. 1991) (applying Oklahoma law, the court
stated, "The construction of an insurance policy should be a natural and reasonable one,
fairly constructed to effectuate its purpose, and viewed in the light of common sense so as
not to bring about an absurd result.").

     Moreover, HOVIC offered the testimony of Kevin Beebe, HOVIC's Manager of
Corporate Insurance, who represented HOVIC when it purchased the Zurich policy, and
John Talarico, HOVIC's Property & Claims Administrator.  They both stated that "it is
Hess' belief and expectation that the [injuries at issue]  are covered under the policy."
App.  at 472; 474.  Although, as Zurich notes, these statements do not necessarily
constitute sufficient evidence to establish HOVIC's reasonable expectation as a matter of
law, they are certainly consistent with the result reached by applying the principles of
contract interpretation that must guide our analysis.

     Furthermore, Zurich could have provided an endorsement that would have
unambiguously achieved the exclusion that Zurich now maintains is accomplished by
Endorsement No.  2. See  McKusick v. Travelers Indemnity Co., 329, 632 N.W.2d 525
(Mich. App. 2001).  The exclusion in McKusick stated: "[t]his insurance does not apply
to: ... '[b]odily injury' or 'property damage' arising out of the... discharge, dispersal,
seepage, migration, release or escape of pollutants: ... which arises out of 'your work'...;

or which arises out of 'your product.'"  Zurich could have similarly inserted language excluding injuries to workers resulting from the workers' exposure to pollutants while they are engaged in the normal course of the ordinary business of the insured.  We do not suggest that this precise language would necessarily remove all questions of coverage in accidents such as occurred here, but it would surely be a more precise way of expressing the intent that Zurich claims is embodied in Endorsement No.  2 of  this insurance policy. Accordingly, we hold that injuries to the individual workers at HOVIC's facility are covered as a matter of law, and the district court erred in denying HOVIC's motion for summary judgment.

          C.  Extent of Coverage of Two-Tiered Settlement
     We believe that the district court also contravened Virgin Islands law in limiting Zurich's exposure to the amount defined by the first tier of HOVIC's settlement agreement.  See Evanston Ins. Co. v. Treister, 794 F.Supp. 560 (D.V.I. 1992).  In Treister, an insurer argued that it should not be liable to the insured for the entire amount of a settlement because the insured had supposedly colluded with the plaintiff and would suffer no personal loss since his personal liability was limited to the amount the court would determine the insurer owed in a declaratory judgment action.  Id. at 573.  The court rejected this argument.  The court held that once the insurer declined coverage, the insured "had the right to enter into a reasonable settlement with the [plaintiff], and to recover, within policy limits, the amount of that settlement" from the insurer.  Id. at 573-74.  Moreover, because the settlement agreement was reasonable, the court entered a declaratory judgment directing the insurer to cover the entire amount negotiated by the insured and the plaintiffs at settlement.
     Here,  the district court expressly declined to follow Treister.  Rather, the court distinguished it by focusing upon the "legally obligated to pay" provision in the Treister policy. Zurich's policy contains the same language.  HOVIC's policy with Zurich requires the latter to pay "all sums which [HOVIC] shall be legally obligated to pay... [whether incurred through] adjudication or compromise."  App.  at 246.  Zurich argues

that since HOVIC is only legally obligated to pay the first tier of the settlement, Zurich's liability is limited accordingly. This argument was also expressly rejected in In re Tutu Water Wells Contamination Litig., 78 F. Supp. 2d 423 (D.V.I. 1999). Tutu Water Wells concerned a coverage dispute arising out of the insurer's refusal to provide coverage, defend or indemnify the insured against numerous environmental actions following gasoline leakage into the surrounding water wells. There, however, the court held that the holding in Treister was consistent with the common law as understood throughout the United States, and declined to follow the district court's subsequent decision here to the contrary. The court reasoned that "[a]llowing an insurer, after it abandoned its duties under the insurance agreement, to thereafter assert as a defense the language of the very contract it refused to honor would lead to an unjust result inconsistent with the principles of Virgin Islands law." Id. at 431. We agree. Moreover, a contrary holding would encourage insurers to decline coverage they are legally obligated to provide in the hopes of capping any future liability to the amount of any settlement that the insured may reach with the injured claimant. Where an insured has recovered a judgment against an insurer after settling underlying claims, the insured is legally obligated to pay the injured parties pursuant to the terms of any settlement agreement, and the insurer remains liable to the insured up to the policy limits where it has undertaken to pay amounts the insured is obligated to pay "by adjudication or compromise."

                         III. CONCLUSION

     For the above reasons, we hold that the district court erred in granting summary judgment to Zurich based upon Endorsement No. 2, and in limiting Zurich's exposure to the amount HOVIC has paid pursuant to the first tier of its settlement agreement with claimants. We will therefore reverse the order of the district court, and remand with instructions that the district court enter judgment for HOVIC pursuant to this opinion.

TO THE CLERK OF THE COURT:

     Please file the foregoing Opinion.


                              /s/Theodore A. McKee


Circuit Judge